UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHOUDRY TAHIR AWAN, on behalf of
himself and others similarly situated,

                              **ORDER**

                  Plaintiff,          14-cv-4562 (SIL)

        -against-

HAMID KHAN DURRANI a/k/a ZAHID
DURRANI and BAY SHORE SMOKE
SHOP, INC.,

                  Defendants.
------------------------------------------------------------------x
**LOCKE, Magistrate Judge:**

      Plaintiff Choudry Tahir Awan ("Plaintiff" or "Awan") commenced this action

against his former employer Bay Shore Smoke Shop (the "Smoke Shop") and its

principal, Hamid Khan Durrani a/k/a Zahid Durrani ("Durrani," together with the

Smoke Shop, "Defendants"), alleging violations of the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL"), and asserting a common law breach

of contract claim.[1]  Presently before the Court is Plaintiff's motion for summary

judgment on all causes of action, and related damages, DE [18], which Defendants

oppose.  *See* DE [21, 22].[2]  For the reasons set forth herein, the motion is granted in

part and denied in part, as follows:  as to Plaintiff's breach of contract claim,

---

[1]    Although the caption indicates the intent to proceed as a class or collective action, no
motion for certification was ever filed.

[2]  This case was previously assigned to United States District Judge Joan M. Azrack.
However, on or about March 10, 2015, the parties, pursuant to 28 U.S.C. § 636(c) and Federal Rule of
Civil Procedure 73, filed an executed Notice, Consent, and Reference of a Civil Action to a Magistrate
Judge (the "Consent Form"), DE [16], indicating their intention to have the undersigned "conduct all
proceedings and order the entry of a final judgment."  Judge Azrack So Ordered the Consent Form
on or about March 11, 2015, DE [17], and as a result, the instant dispositive motion is presently
before this Court for a final decision.

summary judgment is granted as to liability and damages; as to Plaintiff's FLSA and NYLL claims, summary judgment is denied.

## I.    Background

Unless otherwise noted, the following facts are not in dispute.

### A.    The Parties

Plaintiff is a resident of Suffolk County, New York.  *See* Plaintiff's Statement of Undisputed Material Facts ("Pl. 56.1 Stmt."), DE [18], ¶ 1[3]; *see also* Compl. ¶ 6; Ans., DE [4], ¶ 1.   The Smoke Shop is a domestic business corporation with a principal place of business located at 59 Bay Shore Road in Bay Shore, New York.  *See* Pl. 56.1 Stmt. ¶ 2; Compl. ¶ 7; Ans. ¶ 3.   Durrani is also a resident of Suffolk County, New York, and is the president and sole shareholder of the Smoke Shop.  *See* Pl. 56.1 Stmt. ¶ 4; *see also* April 28, 2015 Affidavit of Hamid Khan Durrani in

---

[3] The Court notes that both parties failed to comply with Local Civil Rule 56.1.  Plaintiff's Rule 56.1 Statement is deficient in that its paragraphs are not "followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  E.D.N.Y. Local Civ. R. 56.1(d).  For their part, Defendants failed altogether to provide a "correspondingly numbered paragraph responding to each" of Plaintiff's factual assertions.  *Id.* at R. 56.1(b).  Defendants also failed to provide a compliant "statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.*   In any event, " '[a] district court . . . has broad discretion to determine whether to overlook a party's failure to comply with local civil rules [,] and, thus, may in its discretion opt to conduct an assiduous review of the record[.]' "  *Bilan v. Davis*, 11-cv-5509, 2013 U.S. Dist. LEXIS 107619, at \*4-\*6 n.2 (S.D.N.Y. July 31, 2013) (Report and Recommendation), *adopted*, 2013 U.S. Dist. LEXIS 118065 (S.D.N.Y. Aug. 20, 2013) (exercising discretion to overlook the defendant's failure to support his statement under Local Civil Rule 56.1(b) with citations to admissible evidence in the record).  In *Bilan*, Magistrate Judge Cott opined that "[b]ecause of the limited record . . . and because the material facts are readily apparent from the parties' submissions," the Court should exercise its discretion to review the record independently.  *Id.* (citations omitted).  Here, the summary judgment record is extremely limited and the factual assertions set forth in Plaintiff's 56.1 Statements are "readily apparent" from his other submissions.  Accordingly, the Court overlooks Plaintiff's deficient filing and independently searches the record for such facts in order to resolve his motion.  Moreover, despite their failure to submit a counterstatement of undisputed material facts, Defendants' position with regard to Plaintiff's factual assertions is similarly apparent from their opposition papers.  Thus, the Court will also overlook their failure to comply with the Local Civil Rules and avoid deeming those facts admitted.  *See* E.D.N.Y. Local Civ. R. 56.1(c) (providing that each factual assertion not specifically controverted will be deemed admitted).

Opposition to Motion for Summary Judgment ("Def. Aff."), DE [21], ¶ 1; Amended Responses to Plaintiff's First Set of Interrogatories to Defendants ("Def. Am. Int. Resp."), annexed as Exhibit "D" to the Apr. 29, 2015 Declaration of Alan M. Davis, Esq. in Opposition to Plaintiff's Motion for Summary Judgment ("Davis Decl."), DE [21-3], at ¶ 30(a).

Plaintiff claims, and Defendants do not dispute, that the Smoke Shop is an "enterprise engaged in commerce" within the meaning of the FLSA. *See* Pl. 56.1 Stmt. ¶ 6; Compl. ¶ 11; Ans. ¶ 7.

### B. <u>Plaintiff's Employment History</u>

Awan was employed by the Smoke Shop from December 1989 to July 1, 2014—a period of more than 25 years. *See* Pl. 56.1 Stmt. ¶ 7; *see also* March 28, 2015 Affidavit of Tahir Choudry ("Pl. Aff."), DE [18-1], ¶ 2. Although he does not specifically allege his job title, he states that throughout his employment, he was "the sole operator of the store" and was "responsible for opening the shop in the mornings and closing it in the evenings." Pl. Aff. ¶ 2. This is consistent with Defendants' admission that Plaintiff was "a manager of" the Smoke Shop. *See* Def. Am. Int. Resp. ¶ 4(1). Plaintiff claims that during this entire period he "worked from 5 a.m. until 11 p.m. (18 hours) every day for an average work week of 126 hours." Pl. Aff. ¶ 3. In support of this claim, Plaintiff provides four affidavits from non-parties Jeff Jorgenson, Bertrand Demont, Thomas Russo, and Carlos Jimenez. *See* March 28, 2015 Declaration of Eliot F. Bloom, Esq. in Support of Plaintiff's Motion for Summary Judgment ("Bloom Decl."), DE [18-7], at Ex. "E" (Non-Party

Witness Affidavits).   Each of these individuals appears to now be (or at one time was) a customer of the Smoke Shop and attests as to his observation of Plaintiff's work habits.   The Court notes that the affidavits are identical in content, save for blank spaces provided for each individual witness's name, occupation, the typical items purchased by the witness from the Smoke Shop, and the number of years such patronage occurred.   The balance of these *pro forma* affidavits reads as follows:

> During the past 5 years, I stopped at the Bay Shore Smoke Shop between 5 a.m. and then until 11 p.m. every day.   Whenever I was there, TAHIR CHOUDRY was there.   I observed him opening up the store, working at the store all day, and then closing up and locking the store at night.   I observed this routine every day for the past 7 years. While Tony was working, he was the only employee in the store. He signed for deliveries; he stocked the shelves; he tended the counter; and he supervised every function at the store, from opening in the morning and locking up at night.   I was not the only person observing Tony at his work.   There were a number of other people there in the early morning observing Tony unlocking the store, working throughout the day with no break, and closing up and locking the store at night. . . . During the times I was present, I never observed any other person working there.   There was never a female employee and there was never a boss. . . . I am advised that Tony claim [*sic*] in his court matter that he worked from 5am to 11pm seven days to week for at least the last ten years. . . .

Bloom Decl., Ex. "E" at ¶¶ 3-5.

The Court expresses concern over the reliability of these affidavits.   Initially, they speak of an individual named "Tony," but Plaintiff has not alleged, and there is no evidence in the record to suggest, that Awan also went by that name.[4]   Thus, to credit these accounts would be to assume a fact not in the record—*i.e.*, that Awan was known, at least by some of Defendants' customers, as Tony—something the

---

[4] Quite to the contrary, Defendants state that Awan had the authority to hire and fire employees and that one of the employees he hired to assist in the Smoke Shop was named Tony.   *See* Def. Aff. ¶ 5.

Court is unwilling to do. In addition, there is a material inconsistency in the affidavits regarding the relevant time period—namely, in the span of three paragraphs, each witness variously claims that his observations relate to the past 5 years, the past 7 years, and the past 10 years. Finally, the Court is given pause by the fact that these affidavits are identical and purport to supply personal knowledge of a factual scenario so expansive as to render them suspect. For instance, the Court is skeptical that each of these affiants visited the Smoke Shop every day for between 15 and 25 years, and that each of them witnessed the Plaintiff "opening up the store, working at the store all day, and then closing up and locking the store at night" 16 hours later. Bloom Decl., Ex. "E" at ¶ 3.[5]

Defendants materially dispute Plaintiff's claims regarding his work experience. First, Durrani disputes the volume of hours Awan claims he worked, attesting that, contrary to Plaintiff's contentions, he "actually opened the store each day at 6:00 a.m. and then left at 8:30 a.m." Def. Aff. ¶ 4. According to Durrani, Plaintiff would then "return to the store at 2:00 p.m. and stay until closing time, which was 10:00 p.m.," and "in the final year the store was open for business, closing time was actually 9:00 p.m." *Id.*[6] Defendants also dispute whether Plaintiff

---

[5] The Court further notes that one affiant, Thomas Russo, also handwrote an addendum to his affidavit that provides as follows:

> I want to add that I went to Chase Bank to make deposit from Smoke Shop (for long time) for Tony, I never see any female employee in the shop. Tony work moring [*sic*] till close. Seven day's weak [*sic*]. I notice his boss went to Pakistan twice a year to drop money. Whatever he makes from two stores Smoke Shop + gas station in Queens hide from I.R.S. Department.

Bloom Decl., Ex. "E".

[6] Though neither party explicitly states whether the Smoke Shop presently operates, the Court finds it reasonable to conclude that it is no longer a going concern. Specifically, in his affidavit Durrani references "the final year the store was open for business." Def. Aff. ¶ 4. And in responses

was the "sole operator of the store," contending instead that Durrani also "worked at the store every day" including "many hours working with [Awan]." Def. Aff. ¶ 5. In addition, Defendants claim that Plaintiff had authority to hire and fire employees, and that Durrani recalls Awan hiring at least three individuals, one of whom was named Elvis and also went by "Pablo," and another that was named Tony. *Id.*; *see* Def. Am. Int. Resp. ¶ 13 (stating that Durrani, Awan, "a person named Elvis who was also known as Pablo, and a person named Tony worked at the [Smoke Shop] during the Relevant Period").[7] In addition, Defendants claim that an individual named Fauzia Durrani was employed by the Smoke Shop and was identified to the New York State Insurance Fund as such. *See id.* ¶¶ 15-16. However, the dates that any of these individuals allegedly worked at the Smoke Shop, as well as their job titles and responsibilities, are not provided, although Defendants do state that "[t]here were no employees performing in a role similar or identical to that of Plaintiff who worked for the Defendants during the last six (6) years." *See id.* ¶ 12. There is no supporting documentation relating to any of these other employees.

## C.   <u>Plaintiff's Compensation</u>

Awan's wage and hour claims are based on his assertion that, despite working eighteen-hour days, seven days per week, for 25 years, he was not paid for any hours in excess of forty, instead receiving $400 per week in cash, representing a

---

to Plaintiff's interrogatories, Defendants state that Durrani worked at the store until it "ceased operations." Def. Am. Int. Resp. ¶ 14. However, the date that the Smoke Shop allegedly closed is not provided.

[7] Plaintiff's Document Demands define the Relevant Time Period as "the period from 1989 through 2014."

$10 hourly rate for only 40 hours of work.  *See* Pl. Aff. ¶¶ 3-4.  Plaintiff further claims never to have "received an Earnings Statement or any other payroll record from the Defendants, including a W-2 tax statement" and that "no statutory deductions [were] withheld from him."  Pl. 56.1 Stmt. ¶ 7.

Defendants dispute Plaintiff's claims on several bases.  Initially, Defendants contend that Awan was at all relevant times an exempt employee within the meaning of the FLSA and NYLL because he "acted in a managerial capacity." Def. Aff. ¶ 9.  In this regard, Durrani states that Plaintiff "ordered merchandise for the store" and "was responsible for receiving the delivery" and "paying for the merchandise."  *Id.*  In addition, Awan "had the authority to hire and fire employees and supervise these employees."  *Id.*  In fact, Plaintiff "was very often responsible for paying the[ ] employees" and "very often paid himself his weekly wages."  *Id.* Consistent with this position, Defendants claim to have discovered a notebook maintained by Plaintiff between November and December 2011, "detail[ing] the store's daily receipts and payments."  *Id.* ¶ 8.  A sampling of pages of this notebook is annexed to Durrani's Affidavit as Exhibit "E", DE [21-3].  The pages indicate that on four occasions between November and December 2011, Plaintiff paid himself $900.  *See id.*

The content of these records dovetails with Defendants' second basis for disputing Awan's claims regarding his compensation:  the amount he claims to have been paid varies among his other filings in this action.  For instance, in his Complaint, DE [1], Awan alleges that during the course of his employment, he

"received his compensation on a salary basis, at a rate of Eight Hundred ($800.00) Dollars per week. . . ." Compl. ¶ 16. This allegation is at variance with Awan's sworn affidavit in support of the instant motion. *See* Pl. Aff. ¶ 4 ("I was paid $400.00 in cash per week"). And, both of these sums are contradicted by the notebook, the contents of which Plaintiff does not deny appear in his handwriting. *See* Def. Aff., Ex. "E" (denoting $900.00 per week as "Tahir pay").

Finally, Awan claims, in conclusory fashion, that he "was not fully paid for [his] last year of employment and [is therefore] owed $15,000.00 in unpaid wages." Pl. Aff. ¶ 5. No further details are submitted in support of this claim and Defendants do not directly address it.

### D.   Defendants' Allegedly Deficient Recordkeeping

Central to Plaintiff's motion for summary judgment is the undisputed fact that, save for the excerpted notebook pages described above, which relate to a one-month period in 2011, Defendants failed to maintain any records relating to the other 25-plus years of Awan's employment. In this regard, Defendants' Responses to Plaintiff's First Request for the Production of Documents ("Pl. Doc. Demands"), *see* Bloom Decl., Ex. "D", admit that Defendants are "not in possession of any documents referring to, relating to, or reflecting" the following as relates to the relevant time period: "Plaintiff's jobs/occupations with Defendants"; "the time and day of the week when Plaintiff's work week began for each week"; "the hours worked each day by the Plaintiff"; "the total hours worked each week by the Plaintiff"; "the basis on which Plaintiff's wages were paid"; "Plaintiff's hourly rate of

pay"; "Plaintiff's total daily or weekly straight-time earnings for each workweek"; any "additions to or deductions from Plaintiff's wages"; "the total wages paid to Plaintiff during each pay period"; and "the date of payment and the pay period covered by the payment made to Plaintiff." *Id.* ¶¶ 4-14. In addition, Defendants concede that they possess no "journals, transcripts, diaries, transaction reports, pay stubs, pay checks, wage papers, punch-clock records, documents, papers, job applications, invoices, emails, memoranda, notes, or any other written or electronically stored material referencing the Plaintiff, his wages, salaries, rates and methods of pay, hours worked, arrivals/departures from work, breaks taken, or any matter concerning Plaintiff's employment with Defendants." *Id.* ¶ 15.

### E. Plaintiff's Loan to Defendant

Plaintiff also asserts a cause of action against Durrani for common law breach of contract arising from an alleged loan agreement between the two men. In his complaint, Awan alleges, in relevant part, that "[o]n March 26, 2014, the Defendants and Plaintiff entered an agreement whereby the Plaintiff would loan the Defendants the sum of Forty Thousand ($40,000.00) Dollars which would be due and payable on May 7, 2014." Compl. ¶ 26. Awan alleges that he tendered the loan amount, but Durrani breached the agreement by failing to repay it. *See id.* ¶¶ 27-28. In his answer, Durrani expressly admits these factual allegations, stating in relevant part that "Plaintiff loaned $40,000.00 to Defendant [Durrani]" and "Defendant [Durrani] owes $40,000 to Plaintiff." Ans. ¶¶ 13-16.

## II. Procedural History

Awan commenced the instant action on or about July 30, 2014, seeking damages for: unpaid wages and unpaid overtime under the FLSA and NYLL; unpaid meal periods under the NYLL; and common law breach of contract. *See* Compl. ¶¶ 30-56. Issue was joined on or about November 3, 2014, *see* DE [4], and the parties proceeded to conduct preliminary discovery. On or about January 27, 2015, Plaintiff made a motion for sanctions against Defendants for failure to comply with the Court-ordered discovery schedule. *See* DE [13]. Specifically, Plaintiff alleged that Defendants failed to respond to his first sets of document demands and interrogatories. The Court held a hearing on the motion on February 27, 2015, *see* DE [15], at which the Court concluded that Defendants had waived any objections to Awan's outstanding discovery demands and ordered Defendants to serve responses thereto on or before March 13, 2015.[8] In addition, the Court held the remaining discovery deadlines in abeyance, pending Plaintiff's anticipated motion for summary judgment. *See id.*

As noted above, on or about March 10, 2015, the parties consented to have the undersigned "conduct all proceedings and order the entry of a final judgment" in

---

[8] As part of the instant motion, Plaintiff asserts that as of March 28, 2015, Defendants had not yet complied with the Court's directive. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Memo of Law"), DE [18-3], at 2. However, Defendants explain that they hand-delivered the subject responses to Plaintiff's counsel on March 13, 2015 but, due to inadvertence, those responses were not signed as required under Federal Rule of Civil Procedure 33(b)(5). *See* Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Memo of Law"), DE [22], at 3. Further, Defendants assert that amended responses were served simultaneously with their opposition to the instant motion. *See id.* Plaintiff does not dispute this. *See* May 7, 2015 Reply Declaration of Eliot F. Bloom, Esq. ("Bloom Reply"), DE [23], at ¶¶ 10-11 (referencing Defendants' responses to Plaintiff's discovery demands); *see also* David Decl., Ex. "C" (Amended Response to Plaintiff's First Request for the Production of Documents) and "D" (Amended Response to Plaintiff's First Set of Interrogatories to Defendants). Accordingly, the Court disregards that portion of the instant motion relating to a purported discovery default as moot.

this matter.  DE [16].  Thereafter, on March 30, 2015, Awan filed the instant motion

seeking summary judgment on each of his claims, and related monetary damages.[9]

## III.    Legal Standards

### A.    <u>Summary Judgment</u>

A party moving for summary judgment bears the burden of proving that

there exists no genuine issue of material fact and that the moving party is entitled

to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "Material facts are those

that may affect the outcome of the case."  *Maxton v. Underwriter Labs, Inc.*, 4

F. Supp. 3d 534, 542 (E.D.N.Y. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248, 106 S. Ct. 2505 (1986)).  "An issue of fact is considered 'genuine' when

a reasonable finder of fact could render a verdict in favor of the non-moving party."

*Id.*  "In considering a summary judgment motion, 'the court's responsibility is not to

resolve disputed issues of fact but to assess whether there are any factual issues to

be tried, while resolving ambiguities and drawing reasonable inferences against the

moving party.' "  *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.

1986)).

---

[9] Awan seeks a damages award of $1,050,340 but fails to specifically delineate how that figure was calculated.  Rather, Plaintiff claims that he is entitled to the following specified amounts, which total $658,720:  (i) $15,000 in unpaid wages from his final year of employment; (ii) $201,240 in unpaid overtime wages under the FLSA, consisting of $15.00 per hour (time-and-a-half) for 86 overtime hours per week, over the course of three years; (iii) $402,480 in unpaid overtime wages under the NYLL, consisting of $15.00 per hour for 86 hours per week, over the course of six years; and (iv) $40,000 representing the unpaid loan principle.  Awan does not identify the source of the remaining $391,620 he seeks, but argues that the FLSA provides for an additional amount of liquidated damages where an employer acts willfully in violating the statute.  *See id.* at 5-7.  While Awan does not articulate a particular amount to which he believes he is entitled on that ground, the Court finds it reasonable to infer that the remaining $391,620 identified in Awan's motion papers relates to liquidated damages.  Moreover, Plaintiff claims to seek "interest and attorney fees and costs," *id.* at 8, but does not further address this portion of his claim in the instant motion papers.

## B. Applicable Standards Under the FLSA

"Congress enacted the FLSA in 1938 to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers,' 29 U.S.C. § 202(a), and to 'guarantee [ ] compensation for all work or employment engaged in by employees covered by the Act.' " *D'Arpa v. Runway Towing Corp.*, 12-cv-1120, 2013 U.S. Dist. LEXIS 85697, at *13-*14 (E.D.N.Y. June 18, 2013) (quoting *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602, 64 S. Ct. 698, 88 L. Ed. 949 (1944)). "As part of that effort, the Act imposes numerous 'wage and hour' requirements, including establishing a minimum wage and requiring overtime pay, both of which are at issue in this case." *Id.* at *14 (citing 29 U.S.C. §§ 206, 207).

### 1. *Overtime and Minimum Wage Provisions*

As relevant here, the FLSA provides as follows:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods, wages at the . . . rate [of] $7.25 an hour. . . .

29 U.S.C. § 206(a)(1)(C).

In addition, the FLSA requires that:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

## 2. *Exemptions*

"The FLSA's overtime and minimum wage provisions apply only to 'employees' who are 'employed' by 'employers.'" *D'Arpa*, 2013 U.S. Dist. LEXIS 85697, at *40-*41 (citing 28 U.S.C. §§ 206(a), 207(a)(1), 203(e)(1)). Generally speaking, "the term 'employee' means any individual employed by an employer." 29 U.S.C. § 206(e)(1). However, "certain employees, including those who are employed in 'a bona fide executive, administrative, or professional capacity,' are exempt from" the FLSA's minimum wage and overtime compensation requirements. *Callari v. Blackman Plumbing Supply Inc.*, 988 F. Supp. 2d 261, 275 (E.D.N.Y. 2013) (quoting 29 U.S.C. § 213(a)(1)). Although "the FLSA does not define the terms 'executive,' 'administrative,' or 'professional' for purposes of the exemption," the Department of Labor ("DOL") has promulgated regulations to aid in the analysis (hereinafter, the "Regulations"). *Id.* at 275-76 (noting that the "[R]egulations have the force of law, and are generally given controlling weight" (citations omitted)).

### a. The Executive Exemption

With respect to the "executive exemption," the Regulations provide, in pertinent part, as follows:

> The term "employee employed in a bona fide executive capacity" . . . shall mean any employee:
> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;[10]

---

[10] Pursuant to 29 C.F.R. § 541.602(a), "[a]n employee will be considered to be paid on a 'salary basis' . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which

13

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;[11]

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

According to the Regulations, "management," as used in the foregoing provision, includes, but is not limited to the following:

> Activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. "Provided that an employee's primary duty is management, '[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption.'" *Gardner v. W. Beef Props.*, 07-cv-2345, 2013 U.S. Dist. LEXIS 56511, at *25 (E.D.N.Y. Mar. 25, 2013) (Report and

---

amount is not subject to reduction because of variations in the quality or quantity of the work performed."

[11] "Under the interpretive regulations, an employee's 'primary duty' is the duty that consumes a 'major part, or over [fifty] percent, of the employee's time.'" *Reiseck v. Universal Communs. of Miami, Inc.*, 591 F.3d 101, 107 (2d Cir. 2010) (quoting 29 C.F.R. §§ 541.103, 541.206).

Recommendation), *adopted*, 2013 U.S. Dist. LEXIS 55725 (E.D.N.Y. Apr. 16, 2013) (quoting 29 C.F.R. § 541.106). "For example, '[a]n exempt employee can . . . simultaneously direct the work of other employees and stock shelves [provided that his primary duty is management].' " *Id.* (quoting 29 C.F.R. § 541.106(b)).

Additionally, the Regulations clarify that the third factor—"customarily and regularly directing the work of two or more other employees"—contemplates direction over "two full-time employees or their equivalent" and "[a]n employee who merely assists the manager of a particular department and supervises two or more employees only in the actual manager's absence does not meet this requirement." 29 C.F.R. § 541.104(b)-(c). In a related context, the Regulations expound upon the phrase "customary and regularly," indicating that it "signifies a frequency which must be greater than occasional, but which may be less than constant." 29 C.F.R. § 531.57 (regarding "tipped employees" under the FLSA). While "[c]ourts have declined to set bright-line rules regarding what constitutes 'customarily and regularly[,]' . . . courts have typically construed the regulation to require an individual to supervise two or more full-time employees at least seventy-five to eighty percent of the time." *McKinney v. United Stor-All Ctrs. LLC*, 656 F. Supp. 2d 114, 131-32 (D.D.C. 2009) (citing *Morgan v. Family Dollar* Stores, 551 F.3d 1233, 1275 (11th Cir. 2008), *cert. denied*, 558 U.S. 816, 130 S. Ct. 59, 175 L. Ed. 2d 23 (2009); *Jackson v. Go-Tane Servs., Inc.*, 56 F. App'x 267, 272 n.8 (7th Cir. 2003); *Murray v. Stuckey's, Inc.*, 50 F.3d 564, 568 (8th Cir. 1995), *cert. denied*, 516 U.S.

863, 116 S. Ct. 174, 133 L. Ed. 2d 114 (1995); *Sec'y of Labor v. Daylight Dairy Prods., Inc.*, 779 F.2d 784, 788 (1st Cir. 1985); *Perez v. Radioshack Corp.*, 522 F. Supp. 2d 731, 741-42 (N.D. Ill. 2005)); *see Nicolai v. City of Whitehall*, 2011 Wisc. App. LEXIS 354, at *10 (Wisc. Ct. App. May 10, 2011) ("Federal courts have held that an employee 'customarily and regularly' supervises two full-time subordinates if he or she supervises subordinates who work a combined 80 hours per week at least eighty percent of the time"), *review denied*, 337 Wis. 2d 50, 2011 Wisc. LEXIS 626 (2011).

b.    The Administrative Exemption

Relatedly, with respect to the "administrative exemption," the Regulations provide that:

> The term "employee employed in a bona fide administrative capacity " . . . shall mean any employee:
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).   In order to perform work that is "directly related to the management or general business operations," an employee must "perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."   29 C.F.R. § 541.201(a).   Such work includes, but is not limited to:

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

*Id.* § 541.201(b).

In addition, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 541.202(a). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* This factor "must be applied in the light of all the facts involved in the particular employment situation in which the question arises." *Id.* § 541.202(b).

c.     Applicable Burden of Proof

"[B]ecause the FLSA is a remedial act, its exemptions . . . are to be narrowly construed, and the burden rests on the employer to prove that a particular employee is exempt from the Act's requirements." *Callari*, 988 F. Supp. 2d at 275 (internal citations and quotation marks omitted). And, whether an employee is exempt from the FLSA's provisions "is a mixed question of law and fact." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (citation omitted). As the Supreme Court has instructed, the question of how the employee spends his time working is one of fact, while the question of whether those particular activities exclude him from the FLSA's embrace is one of law. *See Icicle Seafoods, Inc. v.*

*Worthington*, 475 U.S. 709, 714, 106 S. Ct. 1527, 89 L. Ed. 2d 739 (1986); *cf. Gordon v. Rite Aid Corp.*, 09-cv-7665, 2012 U.S. Dist. LEXIS 54071, at *34-*35 (S.D.N.Y. Mar. 12, 2012) (" 'Consideration of the [above-recited] factors is a highly fact-intensive inquiry, to be made on a case-by-case basis in light of the totality of the circumstances.' " (quoting *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010))). Thus, summary judgment can only be appropriate where " 'the parties agree on the scope of the plaintiff[']s duties or, when such facts are disputed, the Court accepts the plaintiff[']s version as true, but the parties disagree about whether those duties entitle the defendant to claim an exemption under the FLSA.' " *Id.* at *36 (quoting *Scott v. SSP Am., Inc.*, 09-cv-4399, 2011 U.S. Dist. LEXIS 32819, at *20-*21 (E.D.N.Y. Mar. 29, 2011)).

### 3.    *Duty to Maintain Records*

In addition, "[t]he FLSA requires employers to maintain accurate records of the hours and wages of their employees." *D'Arpa*, 2013 U.S. Dist. LEXIS 85697, at *51 (citing 29 U.S.C. § 211(c)). " '[A]t summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount of [the uncompensated work] as a matter of just and reasonable inference.' " *Id.* (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)). Indeed, the Supreme Court has noted the difficulties faced by employees who attempt to establish the hours they worked for employers who fail to maintain adequate records:

> When the employer has kept proper and adequate records, the employee may easily discharge his burden by securing the production

of those records. But where an employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), *reh'g denied*, 329 U.S. 822, 67 S. Ct. 25, 91 L. Ed. 699 (1946). The Court held that in such scenarios:

> the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation, . . . an employee has carried his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88. Within this framework, an "employee's burden in proving damages under the FLSA is minimal, particularly when the employer does not keep records." *Hosking v. New World Morg., Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014); *see D'Arpa*, 2013 U.S. Dist. LEXIS 85697, at *51-*52 ("The Second Circuit has established that 'it is possible for a plaintiff to meet this burden through estimates based on his recollection" (quoting *Kuebel*, 643 F.3d at 362)). "But the district court is not permitted to 'just accept [plaintiff's] statement of the damages.'" *Id.* (quoting *Transatl. Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Rather, the Court has discretion to weigh the testimony to determine

whether a "just and reasonable inference" regarding the amount of uncompensated

work allegedly performed by Plaintiff may be drawn therefrom. In this regard,

"there must be at least some credible evidence that [Plaintiff] performed overtime

work" as alleged in the Complaint, and testimony that is "too vague to be credible"

will not suffice. *Daniels v. 1710 Realty LLC*, 497 F. App'x 137, 139 (2d Cir. 2012);

*see Holaway v. Stratsys, Inc.*, 12-cv-998, 2013 U.S. Dist. LEXIS 189434, at *7-*8

(D. Minn. Dec. 20, 2013), *aff'd*, 771 F.3d 1057 (8th Cir. 2014) (granting summary

judgment to employer where employee's testimony concerning the amount of

overtime he worked was "wholly implausible").

### C.   Applicable Standards Under the NYLL

"The New York Labor Law 'is the state analogue to the federal FLSA.'"

*D'Arpa*, 2013 U.S. Dist. LEXIS 85697, at *65. As Judge Gleeson explained in

*D'Arpa*, the NYLL:

> . . . echoes the FLSA in compensation provisions regarding overtime
> and minimum wage requirements. *Chun Jie Yin v. Kim*, 07-cv-1236,
> 2008 U.S. Dist. LEXIS 118533, [ ] at *4 [(E.D.N.Y. Mar. 7, 2008)
> (Report and Recommendation), *adopted,* 2008 U.S. Dist. LEXIS 27040
> (E.D.N.Y. Apr. 3, 2008)]; *Jemine v. Dennis*, 901 F. Supp. 2d 365, 375
> (E.D.N.Y. 2012) ("The New York Labor Law mirrors the FLSA in most
> aspects, including its wage and overtime compensation provisions.");
> *see* 12 N.Y.C.R.R. §§ 142-2.1-2.2. The NYLL, like the FLSA, requires
> that employers pay one and one-half times an employee's regular rate
> of work performed in excess of forty hours a week.

*Id.* at *65-*66.[12]

---

[12] In addition to seeking compensation for work performed in excess of forty hours per week,
as outlined above, Plaintiff asserts a separate claim for "unpaid overtime, unpaid wages" and related
damages arising from Defendants' alleged "fail[ure] to provide Plaintiff with a daily thirty (30)
minute uninterrupted meal period." Compl. ¶¶ 51-52. However, it warrants noting that under N.Y.
Lab. Law § 162 (requiring meal periods), no private statutory right of action exists to enforce it. For

And, "just as the FLSA and its [R]egulations define and exempt from its minimum wage and overtime requirements persons employed in 'a bona fide executive, administrative or professional capacity,' 29 U.S.C.A. § 213(a)(1), the NYLL and its implementing regulations exempt from its wage and overtime provisions individuals who work in an 'executive, administrative or professional capacity.' " *Niemic v. Ann Bendick Realty*, 04-cv-897, 2007 U.S. Dist. LEXIS 98840, at *9 (E.D.N.Y. Mar. 30, 2007) (Report and Recommendation), *adopted*, 2007 U.S. Dist. LEXIS 97531 (E.D.N.Y. Apr. 23, 2007) (quoting 12 N.Y.C.R.R. § 141-3.2(c)).

As relevant here, the NYCRR defines an employee working in a bona fide executive capacity as an individual:

> (a) whose primary duty consists of the management of the enterprise in which such individual is employed or of a customarily recognized department or subdivision thereof; and
> (b) who customarily and regularly directs the work of two or more other employees therein; and
> (c) who has the authority to hire and fire employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
> (d) who customarily and regularly exercises discretionary powers; and

---

instance, in *Browne v. IHOP*, 05-cv-2005, 2005 U.S. Dist. LEXIS 48129, at *2-*3 (E.D.N.Y. Aug. 8, 2005), Judge Trager dismissed the claims of a *pro se* plaintiff-employee who alleged that she had been denied half-hour lunch breaks over a four-year period, concluding that "[w]hile Article 5 of the New York Labor Law, section 162, affords an unpaid meal period, there is no private right of action to enforce this provision" (collecting cases). New York courts are in accord. *See McElroy v. New York*, 50 Misc. 2d 223, 225, 270 N.Y.S.2d 113, 115 (Sup. Ct. Special Term Kings Cnty. 1966), *aff'd*, 29 A.D.2d 737, 287 N.Y.S.2d 352 (App. Div. 2d Dep't 1968) (holding that "there [wa]s no question that the defendant illegally denied [the plaintiffs] 15 minutes of lunchtime which they were entitled to," but that the plaintiffs "[could] not recover the value thereof since under the statute they are given no right of action for any violation thereof"). Thus, to the degree Awan seeks compensation for allegedly having been denied meal periods during his employment, no cause of action for such relief exists and Plaintiff may instead "consider presenting [such a] claim to the New York Commissioner of Labor who is charged with regulating and enforcing New York's labor laws." *Browne*, 2005 U.S. Dist. LEXIS 48129, at *4 (citation omitted). However, to the extent Awan is alleging that he worked through his statutory lunch breaks without pay, his claims may be cognizable under the overtime and minimum wage provisions of the NYLL discussed hereinabove.

(e) who is paid for his services a salary of not less than . . . $626.25 per week. . . .

12 N.Y.C.R.R. § 141-3.2(c)(1).

Similarly, the NYCRR defines an employee working in a bona fide administrative capacity as an individual:

(a) whose primary duty consists of the performance of office or nonmanual field work directly related to management policies or general operations of such individual's employer;
(b) who customarily and regularly exercises discretion and independent judgment;
(c) who regularly and directly assists an employer, or an employee employed in a bona fide executive or administrative capacity . . . or who performs, under only general supervision, work along specialized or technical lines requiring special training, experience or knowledge; and
(d) who is paid for his services a salary of not less than . . . $626.25 per week. . . .

12 N.Y.C.R.R. § 140-2.14(c)(4)(ii). In this regard, "New York law follows the FLSA on the standards that govern the executive [and administrative] exemption[s]." *Gardner v. W. Beef Props.*, 07-cv-2345, 2013 U.S. Dist. LEXIS 56511, at *9 n.2 (E.D.N.Y. Mar. 25, 2013) (Report and Recommendation), *adopted*, 2013 U.S. Dist. LEXIS 55725 (E.D.N.Y. Apr. 16, 2013) (citations omitted); *see Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 160 (S.D.N.Y. 2014) ("FLSA's exemptions are incorporated into the NYLL"); *Sethi v. Narod*, 974 F. Supp. 2d 162, 183 (E.D.N.Y. 2013) ("The NYLL also provides exemptions for some employees similar to the FLSA"); *Harper v. GEICO*, 980 F. Supp. 2d 378, 384 (E.D.N.Y. 2013), *vacated and remanded on other grounds*, 586 F. App'x 772 (2d Cir. 2014) ("The FLSA statutory exemptions from the

overtime payment requirement are incorporated into New York State's parallel overtime provision" (citation omitted)).

Finally, "New York law also requires that employers keep various, detailed employment records. Like the FLSA, the NYLL requires that employers keep employment records in their course of business relating to employees' rates of pay, hours, dates of work, and payroll, among other information." *Dominguez v. BS Supermarket, Inc.*, 13-cv-7247, 2015 U.S. Dist. LEXIS 39670, at *20 (E.D.N.Y. Mar. 5, 2015) (Report and Recommendation), *adopted*, 2015 U.S. Dist. LEXIS 39512 (E.D.N.Y. Mar. 27, 2015) (citing N.Y. Lab. Law § 195). "Thus, where the defendant has failed to maintain proper records, the burden of proving that plaintiff was paid properly falls on the defendant." *Id.* at *21 (citing *Marin v. JMP Restoration Corp.*, 09-cv-1384, 2012 U.S. Dist. LEXIS 136498 (E.D.N.Y. Aug. 24, 2012) (Report and Recommendation), *adopted*, 2012 U.S. Dist. LEXIS 136490 (E.D.N.Y. Sept. 24, 2012) ("To determine NYLL overtime damages, courts use the same burden-shifting scheme employed in FLSA actions").

IV.    **Analysis**

A.    <u>**Plaintiff's Breach of Contract Claim**</u>

Awan is entitled to summary judgment on his breach of contract cause of action. In New York, "[t]o establish a claim of breach of contract . . . , a plaintiff must demonstrate '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Zorbas v. U.S. Trust Co., N.A.*, 11-cv-2318, 2014 U.S. Dist. LEXIS

137756, at *23 (E.D.N.Y. Sept. 29, 2014) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). The parties do not dispute the material facts underpinning Plaintiff's breach of contract claim—namely, that the parties entered into a loan agreement pursuant to which Plaintiff loaned Defendants $40,000, Defendants did not repay any part of the loan principle, and Defendants currently owe the loan principle to Plaintiff. Accordingly, summary judgment on this claim is granted and damages should be awarded to Plaintiff in accordance with Section VI, below.

## B.  Plaintiff's Claims Under the FLSA and NYLL

Plaintiff also seeks damages for Defendants' alleged violations of the overtime and minimum wage provisions of the FLSA and NYLL. However, before addressing the merits of those claims, the Court considers a threshold issue raised by Defendants: whether Plaintiff is exempt from the statutes' requirements as an executive or administrative employee. *See* Def. Memo of Law at 2,4.

### 1.  *The Executive Exemption*

Applying the standards outlined above, and weighing the appropriate regulatory factors, the Court concludes that material questions of fact exist sufficient to warrant a trial on the issue of whether Awan is an "employee engaged in a bona fide executive capacity" within the meaning of the FLSA and NYLL, and therefore exempt from those statutes' protections.[13]

---

[13]  Although the Court's analysis follows the framework established under the federal Regulations, its analysis applies with equal force to the parallel exemptions established under New York law. *See Gardner*, 2013 U.S. Dist. LEXIS 56511, at *9 n.2 ("New York law follows the FLSA on the standards that govern the executive exemption"); *Jackson*, 298 F.R.D. at 160 ("FLSA's

### a.  First Factor—Compensated on a Salary Basis

There is no dispute that Awan was "compensated on a salary basis," although the parties disagree on whether such compensation exceeded $455 per week.  In fact, the Court notes that Plaintiff's own statements on the subject are inconsistent, raising an issue of fact in this regard.  Specifically, while attesting in support of summary judgment that he was paid $400 per week, Awan alleged in his Complaint that he received $800 per week.  And, Defendants proffered evidence, which Plaintiff did not materially dispute, demonstrating that for at least a brief period in 2011, he received $900 per week.  Accordingly, the Court finds that a question of material fact exists regarding the first factor as to whether the executive exemption applies.[14]

### b.  Second Factor—Primary Duty of Managing the Enterprise

As made clear by the interpretive Regulations, the operative question regarding the next factor is whether "a major part, or over fifty [ ] percent, of [Awan]'s time" at work was spent in management.  *See Reiseck*, 591 F.3d at 107 (quoting 29 C.F.R. §§ 541.103, 541.206).  And in this regard, the record contains material factual inconsistencies that are sufficient to preclude summary judgment on this issue.

---

exemptions are incorporated into the NYLL"); *Sethi*, 974 F. Supp. 2d at 183 ("The NYLL also provides exemptions for some employees similar to the FLSA"); *Harper*, 980 F. Supp. 2d at 384 ("The FLSA statutory exemptions from the overtime payment requirement are incorporated into New York State's parallel overtime provision").

[14] The Court notes that although the monetary threshold applicable to the first factor of the executive exemption analysis under the FLSA ($455.00) is different than its NYLL counterpart ($626.25), the Court's conclusion in this regard remains the same.  Indeed, Plaintiff's most recent assertions on the issue (*i.e.*, that he received $400 per week), if true, would render him non-exempt for purposes of this factor under both statutes, and Defendants' assertions (*i.e.*, that he in fact received $800-$900 per week), if true, would render him exempt.

Initially, Awan's own contentions are again inconsistent with his stated position: despite resisting classification as an "executive employee," he readily concedes that he was "the sole operator of the" Smoke Shop and "worked independently" without "any other person" during the relevant time period. Pl. Memo of Law at 1; Pl. Aff. ¶ 2. Further, he claims that throughout the course of his employment he performed work that was "directly essential to the business operated by Defendants." Pl. 56.1 Stmt. ¶ 8. Similarly, the non-party witness affidavits he submits state that Plaintiff "supervised every function of the store." *See* Bloom Decl., Ex. "E" at ¶ 3. Defendants' statements on this subject are also self-contradictory—on the one hand they argue that Awan is an executive employee, responsible for ordering merchandise for the store, receiving deliveries, paying for merchandise, and hiring and firing employees, while on the other hand disputing that Awan operated the store on his own, asserting that Durrani, the store's owner, worked at the Smoke Shop "every day" with him. Def. Aff. ¶¶ 5, 9.

These factual inconsistencies prevent a meaningful examination of whether Awan's job responsibilities rise to the level of executive management within the meaning of the FLSA and NYLL. Specifically, though not dispositive, neither party has submitted evidence sufficient to demonstrate whether Awan set the rates of pay and hours of work for other employees or even for himself; whether he regularly maintained production of sales records for use in supervision or control; whether he planned the work of the store or determined techniques to be used in its operation;

whether he planned or controlled the budget; or whether he monitored or implemented legal compliance measures. *See* 29 C.F.R. § 541.102.

Further, and perhaps most glaringly, the parties hotly dispute the existence and roles of other employees at the store, another critical component of the second factor. For his part, Plaintiff insists that he "solely" and "independently" operated the Smoke Shop, opening every morning and closing every evening. He relies on affidavits from customers to demonstrate that that he "was the only employee in the store" and that customers "never observed any other person working there." *See* Bloom Decl., Ex. "E".

Defendants take an utterly conflicting position—namely, that Awan was empowered to hire and fire employees; that he hired three such employees; and that he was responsible for supervising and paying them. *See* Def. Aff. ¶¶ 5, 9. There is nothing in the record to demonstrate whether Awan interviewed, selected, and trained employees; whether he appraised other employees' productivity and efficiency; whether he handled complaints and grievances; whether he disciplined any employees; whether he apportioned work among them; or whether he provided for employees' safety and security. *See* 29 C.F.R. § 541.102. Based on this record, scant as it is, the Court concludes that a genuine issue of material fact exists with regard to the second factor.

c. <u>Third Factor—Customarily and Regularly Directing Two or More Employees</u>

The parties' conflicting factual assertions regarding the Smoke Shop's employees also raise a question of fact concerning the third factor, concerning supervision of employees.

Initially, the Regulations make clear that this factor contemplates an employee exercising direction over "two full-time employees." In this regard, Defendants assert that Awan hired and supervised three employees, but they neither allege nor provide evidence relating to the workers' dates of employment, typical work hours, or whether they contributed a combined 80 hours per week to the Smoke Shop. As Awan flatly denies even the basic existence of these employees, a trial is required on the issue of whether, and in what capacity, the Smoke Shop employed other individuals.

Further, assuming *arguendo* that there were other employees, questions of fact abound concerning the degree to which Awan supervised them. In this regard, Awan states that he was the "sole operator" of the store. If true, this fact suggests that he was responsible for overseeing any other staff. Similarly, Defendants state that "[t]here were no employees performing in a role similar or identical to that of Plaintiff who worked for the Defendants during the last six (6) years." Def. Am. Int. Resp. ¶ 12. Thus, if none of the other alleged employees hired by Awan performed in a role similar to him, it stands to reason that Plaintiff functioned as their supervisor, which is directly relevant to the executive exemption analysis. It bears emphasizing that there is no evidence regarding the dates that the alleged other

employees began and ended their employment; the amount of days or hours they worked; their job responsibilities generally or specifically vis-à-vis Awan; or the conditions of their employment over which Plaintiff exercised supervisory authority. Remarkably, Durrani, who claims to have worked at the store with Awan every day, cannot even recall one of the three employees' names. Based on these alleged facts, there is insufficient evidence in the record to permit this Court to determine the third factor as a matter of law.

        d.    <u>Fourth Factor—Authority to Hire and Fire Employees/Particular Weight Given to Personnel Suggestions</u>

Similarly, a genuine question of material fact exists with regard to the fourth and final factor, concerning hiring and firing employees. Specifically, Defendant explicitly states that Plaintiff "had the authority to hire and fire employees" and did so on at least three occasions. Def. Aff. ¶ 5. Awan does not deny this, but instead focuses on Defendants' failure to maintain business records as a basis for granting summary judgment on the issue. In addition, Durrani recalls that one of the employees hired by Plaintiff was named Tony, which is the same name referenced throughout the customer affidavits relied upon by Awan. *See id.* ¶ 5; *see also* Bloom Decl., Ex. "E" ("While Tony was working, he was the only employee in the store"). On this record, there is insufficient evidence to determine the scope of Awan's decision-making authority, if any, with respect to any other Smoke Shop employees as a matter of law and summary judgment on this issue is inappropriate.

Accordingly, material issues of fact exist as to each of the foregoing factors sufficient to warrant a trial as to whether the executive exemption applies.

## 2. *The Administrative Exemption*

The Court reaches a contrary result with respect to the administrative exemption. In this regard, Defendants have not met their burden of establishing that Awan is an "employee engaged in a bona fide administrative capacity" within the meaning of the FLSA and NYLL as matter of law.

### a. First Factor—Compensated on a Salary Basis

This factor mirrors the first factor of the executive exemption analysis. The Court accordingly adopts its prior reasoning, and concludes that a question of material fact exists regarding the first factor for whether the administrative exemption should apply.

### b. Second Factor—Primary Duty of Performing Office/Non-Manual Work Directly Related to Management

Defendants, however, have failed to submit any evidence that Plaintiff's primary duties were administrative in nature. An examination of the interpretive Regulations makes clear that the nature of Awan's work in the Smoke Shop was not of the kind contemplated as "directly related to the management or general business operations." In this regard, the Regulations explicitly state that administrative work is to be "distinguished . . . from . . . selling a product in a retail or service establishment," which was Awan's essential function in the store. 29 C.F.R. § 541.201(a). And even assuming that Plaintiff was, as Defendants claim, tasked with the ancillary duties of opening and closing the store, ordering and

Accordingly, material issues of fact exist as to each of the foregoing factors sufficient to warrant a trial as to whether the executive exemption applies.

## 2. *The Administrative Exemption*

The Court reaches a contrary result with respect to the administrative exemption. In this regard, Defendants have not met their burden of establishing that Awan is an "employee engaged in a bona fide administrative capacity" within the meaning of the FLSA and NYLL as matter of law.

### a. First Factor—Compensated on a Salary Basis

This factor mirrors the first factor of the executive exemption analysis. The Court accordingly adopts its prior reasoning, and concludes that a question of material fact exists regarding the first factor for whether the administrative exemption should apply.

### b. Second Factor—Primary Duty of Performing Office/Non-Manual Work Directly Related to Management

Defendants, however, have failed to submit any evidence that Plaintiff's primary duties were administrative in nature. An examination of the interpretive Regulations makes clear that the nature of Awan's work in the Smoke Shop was not of the kind contemplated as "directly related to the management or general business operations." In this regard, the Regulations explicitly state that administrative work is to be "distinguished . . . from . . . selling a product in a retail or service establishment," which was Awan's essential function in the store. 29 C.F.R. § 541.201(a). And even assuming that Plaintiff was, as Defendants claim, tasked with the ancillary duties of opening and closing the store, ordering and

paying for merchandise, and making certain personnel decisions, such activities do not bring Plaintiff within the realm of those employees who "perform work directly related to assisting with the running or servicing of the business" such as accountants, auditors, insurance specialists and risk managers, human resource professionals, public relations specialists, advertising professionals, and attorneys. *See* 29 C.F.R. § 541.201(b). Thus, Defendants fail to establish a material issue of fact as to the second factor for whether the administrative exemption should apply.

c.  <u>Third Factor—Exercise of Discretion and Independent Judgment on Matters of Significance</u>

Considered "in the light of all the facts involved," there is insufficient evidence submitted to determine the amount of discretion and judgment Plaintiff exercised concerning matters of significance. Neither party directly addresses this point, and the record contains conflicting statements as to the level of discretion or decision-making authority Awan possessed. To note but one example, Durrani claims that Awan had discretion to make personnel decisions and order merchandise, while on the other hand disputing that Plaintiff operated the store on his own, contending instead that he (Durrani) also worked at the store every day. Under these circumstances, there is simply no basis to conclude whether Awan's responsibilities, whatever they were, constituted matters of relative significance to the operation of the business or that they comprised Awan's "primary duties"—*i.e.*, that they occupied fifty percent or more of his work time. As a result, the Court concludes that summary judgment is inappropriate on the third factor of the administrative exemption analysis. Nevertheless, because Defendants fail to meet

their burden on the second relevant factor, summary judgment on this issue is required in Plaintiff's favor and the administrative exemption does not apply.

### 3. *Plaintiff Would Not Be Entitled to Summary Judgment as to Damages under the FLSA and NYLL Even if the Executive Exemption Does Not Apply*

Even if Awan is not covered by the executive exemption and submitted sufficient evidence that he was not properly paid time-and-a-half for hours worked in excess of forty per week, however, summary judgment would still be inappropriate as to the issue of damages based on Plaintiff's FLSA and NYLL wage-and-hour claims because the evidence does not support a "just and reasonable inference" of those damages. Although an "employee's burden in proving damages under the FLSA is minimal, particularly when the employer does not keep records," *Hosking*, 570 F. App'x at 32, "there must [still] be at least some credible evidence that [Plaintiff] performed overtime work" as alleged in the Complaint. *Daniels*, 497 F. App'x at 139. Here, Awan's unsupported affidavit—the only competent evidence in the record relating to damages—is untenable and, without more, is insufficient to justify judgment with a reasonable degree of certainty. Specifically, despite Defendants' conceded failure to keep records regarding Plaintiff's employment, Awan's conclusory allegations that he worked 18 hours per day, every single day of the week, without so much as a thirty-minute lunch break, for more than 25 years are implausible and insufficient to form the basis of a *reasonable* inference or approximation of compensatory damages (which Plaintiff alleges exceed one million dollars in this case as a matter of law). *Cf. Holaway*, 2013 U.S. Dist. LEXIS

189434, at *7-*8.  Similarly, for the reasons set forth above, the Court finds the *pro forma* affidavits of various customers of the Smoke Shop insufficient to establish the days and hours Plaintiff worked as a matter of law.

In this regard, the Court recognizes that Defendants inarguably violated the FLSA and NYLL by failing to maintain the required business records.  However, contrary to Awan's contentions, that fact alone does not automatically entitle him to a specific amount of damages.  Rather, Plaintiff must still present "sufficient evidence" to show the amount of the allegedly uncompensated work, albeit as a matter of reasonable inference.  *See D'Arpa*, 2013 U.S. Dist. LEXIS 85697, at *51. Awan's supporting affidavit, without more, is insufficient for this purpose.

In addition, the Court finds Defendants' testimonial evidence sufficient to raise an issue of fact as to the amount of uncompensated work Awan actually performed.  As noted above, Defendants do not materially dispute the fact that Plaintiff performed work in excess of forty hours per week for which he did not receive overtime pay, but they do contend that the actual number of hours is substantially less than what Awan alleges.  Thus, Durrani's affidavit, when viewed in the light most favorable to Defendants, would be sufficient under the circumstances to raise a genuine fact issue regarding Plaintiff's estimation of damages.

Finally, Plaintiff advances no substantive argument, and submits no supporting evidence, regarding his claims for additional measures of damages, including liquidated damages, attorneys' fees, and costs of the action.  As a result,

even assuming that the executive exemption does not apply, with regard to Awan's wage-and-hour claims, summary judgment as to the issue of damages would be inappropriate.

## VI. Damages

As set forth herein, at this stage, Plaintiff is entitled to damages only on his breach of contract claim. In this regard, Plaintiff is entitled to the principal amount plus prejudgment interest. *See Graham v. James*, 144 F.3d 229, 239 (2d Cir. 1998) ("Under New York law, 'prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract'") (quoting *Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 93 (2d Cir. 1984)); *see also Fed. Ins. Co. v. CAC of NY, Inc.*, 14-cv-4132, 2015 U.S. Dist. LEXIS 32098, at *18-*19 (E.D.N.Y. Feb. 5, 2015) (Report and Recommendation) (collecting cases for the proposition that prejudgment interest in breach of contract cases is "mandatory" under New York law), *adopted*, 2015 U.S. Dist. LEXIS 31923 (E.D.N.Y. Mar. 16, 2015).[15] New York Civil Practice Law and Rules ("CPLR") § 5001 provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract" and "shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." Such interest "shall be at the rate of nine per cent per annum, except where otherwise provided by statute." CPLR § 5004. Accordingly, the Court finds

---

[15] The Court notes that Plaintiff's breach of contract claim is in federal court because of supplemental jurisdiction and "state law governs stand-alone pendent claims in federal question cases." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 03-cv-2175, 2013 U.S. Dist. LEXIS 3521, at *6-*7 & n.13 (S.D.N.Y. Jan. 9, 2013).

that Awan may recover interest at the annual statutory rate of 9% on the principal amount of $40,000 due under the parties' loan agreement.

As noted above, prejudgment interest is calculated from "the earliest ascertainable date the cause of action existed." "Under New York law, a cause of action for breach of contract accrues at the time of the breach." *Fed. Ins. Co.*, 2015 U.S. Dist. LEXIS 32098, at *19 (collecting cases). Here, the breach occurred on May 7, 2014, when Defendants' repayment of the loan amount came due and they failed to make the requirement payment. *See* Compl. ¶¶ 53-55. Thus, the Court calculated prejudgment interest on the principal loan amount through the date of this Order as $4,141.20.[16] And, since the principal amount remains outstanding, daily interest shall continue to accrue at the rate of $9.86 per day for each day until judgment is entered.

## VII. Conclusion

Based on the foregoing, Plaintiff's motion for summary judgment on his breach of contract claim is granted as to the issues of liability and damages. In addition, summary judgment as to Plaintiff's FLSA and NYLL claims is denied.

The parties shall appear before the undersigned on October 6, 2015 at 11:30 a.m. in courtroom 820 of the Central Islip courthouse for the purpose of conducting a final pretrial conference. A joint proposed pretrial order shall be electronically

---

[16] This figure was reached by taking the number of days between the date of the breach, May 7, 2014, and the date of this Order, July 1, 2015 (420 days) and multiplying it by the daily interest rate of $9.86 ($40,000 (principal loan amount) x 0.09 (yearly interest) = $3,600 (yearly interest) / 365 days = $9.86 per day interest). *Cf. Daniello v. PML Furniture Group of NJ, Ltd.*, 06-cv-5261, 2009 U.S. Dist. LEXIS 131676, at *7-*8 n.5 (E.D.N.Y. May 6, 2009) (Report and Recommendation), *adopted*, 2009 U.S. Dist. LEXIS 114931 (E.D.N.Y. Dec. 2009).

filed in accordance with this Court's Individual Rules at least three days prior to the

conference.

Dated:     Central Islip, New York
           July 1, 2015              **SO ORDERED:**

                                     s/ Steven I. Locke
                                     STEVEN I. LOCKE
                                     United States Magistrate Judge