UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TAHIR CHOUDRY a/k/a CHOUDRY TAHIR
AWAN,

                                    Plaintiff,

    -against-

HAMID KHAN DURRANI and BAY SHORE
SMOKE SHOP, INC.,

                                    Defendants.
-----------------------------------------------------------------X

**FINDINGS OF FACT
AND CONCLUSIONS
OF LAW**
14-CV-4562 (SIL)

**LOCKE, Magistrate Judge:**

Plaintiff Choudry Tahir Awan ("Plaintiff" or "Awan") commenced this action against Defendants Hamid Khan Durrani ("Durrani") and Bay Shore Smoke Shop, Inc. (the "Smoke Shop," and together with Durrani, "Defendants"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.*  *See* Docket Entry ("DE") [1]. The Court held a bench trial on March 29, 2016, April 1, 2016, and May 2, 2016 and now issues its findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a). *See* DE [35], [37], [39].  Having considered the evidence adduced at trial, the arguments of counsel, the parties' post-trial submissions, and the controlling law on the issues presented, the Court concludes that Plaintiff has met his burden of proof on all of his overtime claims arising under the FLSA and NYLL, and that he is entitled to $809,760.59 in damages.[1]

---

[1] This action has been assigned to this Court for all purposes pursuant to 28 U.S.C. § 636(c). *See* DE [17].

1

## I.      BACKGROUND

By way of Complaint filed July 30, 2014, Plaintiff commenced this action, seeking to recover, among other things: (i) unpaid overtime and minimum wages pursuant to the FLSA and NYLL; (ii) unpaid meal time pursuant to the NYLL; and (iii) damages for common law breach of contract.  *See* Compl., DE [1], ¶¶ 30-55.  In his Complaint, Plaintiff alleges that during the course of his employment at the Smoke Shop, he worked eighteen hours per day, seven days per week, and that he had never been permitted to take any break from work.  *Id.* at ¶¶ 13-15.  Plaintiff also alleges that Defendants breached a loan agreement whereby Awan loaned Defendants $40,000.00, which would be due and payable on May 7, 2014.  *Id.* at ¶¶ 3, 26-28, 53-56.  Relevant here, Defendants asserted in their Answer to the Complaint that "Plaintiff is an exempt employee under the Fair Labor Standards Act" because he "acted in a management capacity in his employment" at the Smoke Shop.  *See* Ans., DE [4], ¶¶ 24, 25.

On March 30, 2015, Plaintiff filed a motion seeking summary judgment on each of his claims and related monetary damages, which Defendants opposed.  *See* DE [18], [21].  Plaintiff argued, among other things, that "Defendants cannot defend [the] Motion for Summary Judgment since they have no proof of any records or documents required by the FLSA."  *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, DE [18-3], at 1.  In opposition, Defendants countered that Plaintiff "was an exempt employee under FLSA and New York Labor Law because he acted in an executive and/or administrative capacity in his employment at the . . .

Smoke Shop."   *See* Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, DE [22], at 2.   Defendants further argued that Plaintiff submitted an affidavit in support of his motion for summary judgment "which establishe[d] that the Plaintiff did not work the amount of hours he [was] claiming . . . ." *Id.*

In its July 1, 2015 Order (the "Summary Judgment Opinion"), the Court granted in part and denied in part Plaintiff's motion for summary judgment.   *See Awan v. Durrani*, No. 14-CV-6562, 2015 WL 4000139, at *16 (E.D.N.Y. July 1, 2015). Specifically, the Court:  (i) granted Plaintiff's motion for summary judgment on Awan's breach of contract claim with respect to both liability and damages; and (ii) denied Plaintiff's motion for summary judgment with respect to Awan's claims arising under the FLSA and NYLL.[2]  *Id.*  In denying Plaintiff's motion for summary judgment with respect to his statutory claims, the Court held that "material questions of fact exist sufficient to warrant a trial on the issue of whether Awan [was] an 'employee engaged in a bona fide executive capacity' within the meaning of the FLSA and NYLL."  *Id.* at *11.  However, the Court concluded that Defendants failed to submit sufficient evidence to support their claim that "Awan [was] an 'employee engaged in a bona fide administrative capacity . . . as a matter of law," and so that affirmative defense was dismissed.  *Id.* at *13.  The Court further held that, "[e]ven if Awan [was] not covered by the executive exemption . . . summary judgment would still be inappropriate as to the issue of damages.  *Id.*  "Awan's unsupported affidavit . . .

---

[2]  The Court subsequently entered partial judgment in favor of Plaintiff in the amount of $40,000.00 for breach of contract damages, as well as prejudgment interest.  *See* DE [38].

without more, [was] insufficient to justify [the damages he claimed] with a reasonable degree of certainty." *Id.*

As a result, the Court conducted a bench trial on March 29, 2016, April 1, 2016 and May 2, 2016. *See* DE [35], [37], [39]. At trial, Plaintiff offered testimony from: (i) himself; (ii) Durrani; (iii) the Smoke Shop's accountant, William Starita; and (iv) Smoke Shop customers Reyna Jiminez, Norman Reidel, Lamont Cuffie, and Jeff Jorgensen (collectively, the "Customer Witnesses"). *See* Transcript of Bench Trial ("Tr.") 10:17-22, 20:17-20, 34:15-19, 100:19-21, 116:6-8, 125:17-20, 137:10-12. Defendants offered testimony from both Plaintiff and Durrani, but did not present any additional witnesses. Tr. 194:17-22, 198:7-13. Following the trial, the parties submitted their proposed findings of fact and conclusions of law. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Pl.'s Supp. Br."), DE [42]; Defendants' Proposed Findings of Fact and Conclusions of Law ("Defs.' Supp. Br."), DE [43].

## II.    FINDINGS OF FACT[3]

The Smoke Shop owned and operated a convenience store located at 57 Bay Shore Road, Bay Shore, New York. *See* Joint Pretrial Order Stipulated Facts

---

[3] For the sake of clarity and a complete record, the Court notes that Defendant Hamid Durrani was called as witness for both Plaintiff and Defendants. The Court credits none of his testimony. Throughout his entire time on the stand, Mr. Durrani was evasive, both in tone and demeanor. He often required multiple prompts from his lawyer to elicit basic testimony such as the year Plaintiff started working and what he was paid, and then still claimed unconvincingly that he could not recall other rudimentary facts. *See, e.g.*, Tr. 34:25-39:4 (Durrani unable to recall when he hired or what he paid Plaintiff, claiming only that he paid a salary that was more than the minimum wage and admitting that he kept no payroll records), 50:13-51:22 (giving conflicting testimony about the hours Plaintiff worked), Tr. 53:9-57:10 (both referring to certain records that would show that Plaintiff took a multi-year absence from the store and then denying that those records existed once he was reminded that the Court had previously ordered him to disclose those records), 52:17-57:22, 70:11-71:14 (admitting and denying that Awan worked 80 hours weekly over a seven-day workweek), Tr. 71:22-74:16 (claiming that Awan hired and fired another worker whose name and dates of employment Durrani could not recall).

("JPTO"), DE [28], ¶ 2.  Defendant Durrani was the Smoke Shop's "owner, officer, director and/or managing member."  *Id.* at ¶¶ 4, 6, 7; Tr. 34:22-24, 89:22-90:25 (Hamid Durrani was a 60-percent shareholder and his brother Zahid Durrani was a 40-percent shareholder of the controlling corporation).  During all relative time periods, the Smoke Shop had yearly revenues in excess of $500,000.  Tr. 103:19-104:13.

Plaintiff worked at the Smoke Shop from approximately December 1989 until July 1, 2014.  JPTO ¶ 7.  His duties included restocking merchandise, making coffee, cleaning windows, working behind the register and maintaining the store.  *See* Tr. 19:4-25, 28:25-29:3, 32:17-21, 117:13-17, 123:17-23, 133:12-16, 147:14-22, 149:11-17, 179:3-9.  However, he never managed the store, placed orders for merchandise, made decisions regarding what merchandise would be purchased, or otherwise discussed the business with Durrani or anyone else.  Tr. 147:18-25, 151:15-16, 179:10-180:3 (Plaintiff placed orders when Mr. Durrani was out of the country and paid with checks signed by Durrani before he left); *see also* Tr. 40:9-41:9 (Plaintiff did not have a bank card or the ability to sign checks for the Smoke shop), 123:4-124:2, 133:17-19 (customers never saw him order or receive merchandise).[4]  In addition, it is undisputed that "Plaintiff did not supervise two or more full-time employees during the term of his employment" at the Smoke Shop.  Defs.' Supp. Br. ¶¶ 7, 12; *see also* Pl.'s Supp. Br. ¶¶ 6, 14; Tr. 29:4-7, 209:16-210:4.

---

[4] The Court expressly rejects Defendants' claim that Plaintiff was "in charge" of the store or had any significant managerial responsibilities.  *See* Tr. 39:5-40:8, 60:25-61:1 (Durrani claiming that Awan had hiring and firing responsibilities – testimony that the Court rejects due to Durrani's lack of credibility as set forth above).

Defendants did not keep records "relating to or reflecting Plaintiff's jobs, occupations, work hours, rates of pay, wages []or time records and payroll records," and the parties dispute both the number of hours that Plaintiff worked in a given week as well as his rate of pay, though Defendants admit that Awan worked more than 40 hours per week.  *See* JPTO ¶ 8; Pl.'s Supp. Br. ¶¶ 11-14; Defs.' Supp. Br. ¶¶ 8-10; Tr. 209:6-15 (Durrani concedes that Plaintiff worked 50 or 60 hours per week), 217:16-24 (Defendants did not keep payroll records).  According to Plaintiff, he worked at the Smoke Shop from 5:00 a.m. until 11:00 p.m. seven days a week, but was only paid for the first forty hours of work he performed at a rate of $10 per hour. *See* Pl.'s Supp. Br. ¶ 11; Tr. 50:13-51:22, 52:17-24, 54:2-6.  Although this claim seems extreme, the Court credits Plaintiff's testimony because it was both credible and corroborated by *all* of the Customer Witnesses who testified.

For example, Reyna Jiminez testified that starting in October 1992 she went to the store regularly as early as 6am in the morning for coffee and as late as 5:30 p.m. during the week and 8:00 p.m. on weekends.  Further, her husband and son went two or three times a day for cigarettes, and it was always Plaintiff behind the counter. Tr. 10:22-13:10, 16:5-18:7.  When Ms. Jiminez occasionally went to the store in the evening or on holidays, Awan was still there.  Tr. 14:24-15:7.

Norman Riedel went to the store three times a day for years.  Tr. 20:23-21:4, 22:3-23:18.  He would go almost every day, seven days a week, at 5:30 a.m. on weekdays and 6:30 a.m. on weekends, and he would call Plaintiff before coming to make sure he was up.  Tr. 22:11-24:19, 29:21-25.  Riedel also came by every other day

between 4:30 p.m. and 5:00 p.m. after work for coffee, and occasionally went in the evenings as late as 11:00 p.m. or 11:30 p.m.   Tr. 25:22-26:20, 26:25-27:8, 31:11-18. Plaintiff was the person working at the Smoke Shop whenever Riedel was there, every day from morning until evening.  Tr. 23:1-27:8, 28:5-9.  Further, Plaintiff ate his meals at the store and slept in the back room on the floor, leaving the store only on rare occasions in the afternoon when necessary.  Tr. 28:10-24.

Jeff Jorgenson, another regular customer saw Plaintiff at the Smoke Shop "all day long," in the morning when Jorgenson was buying a roll and coffee before work, at lunch during the work day, when he was buying lottery tickets on the way home, and on the weekends.  Tr. 118:1-6, 119:2-7, 122:6-123:14.  According to Jorgenson, Plaintiff "opened and closed the store."  Tr. 118:6.  In fact Jorgensen could not remember a single instance when Awan was not present at the Smoke Shop.  Tr. 119:22-120:8, 120:13-122:15.

Lamont Cuffie bought coffee from Plaintiff every morning at approximately 7:00 a.m.  Tr. 126:13-21.  Mr. Cuffie was also there during the day to get lunch and buy "scratch-offs," and then again at night until 9:00 p.m. or 10 p.m.  Tr. 126:22-127:12.  He did this every day, including weekends, "[e]ven Christmas."  Tr. 127:13-15, 130:2-5.  It was a place where "guys from the neighborhood" "hung out."  Tr. 131:4-13.  Per Cuffie, there was never a time when Awan was absent from the store, and he knew that at least sometimes Plaintiff slept there.  Tr. 128:10-13; 129:6-11; *see also* Tr. 155:5-13.[5]

---

[5] Defendants testified without basis in fact that these customers "lied" on the stand when recalling the hours each of them saw Plaintiff at the store.  Tr. 216:13-217:1.  The Court disagrees for

Further, Awan worked alone at the Smoke Shop.  Tr. 146:20-22, 186:4-18; *see* Tr. 19:10-12, 118:21-119:1, 128:10-16 (customers testifying that they only saw Plaintiff working at the store).  In making this finding of fact that Court expressly rejects Defendants' testimony that Plaintiff hired two employees to work with him. Durrani could only identify one of these employees by the name "Elvis" or "Pablo," could not recall his last name or when he was hired or fired, although he recalled that this person worked for a few months.  Tr. 71:22-73:21, 206:16-23.  The other employee, named "Tony," was fired for speaking "badly" to a woman.  Tr. 207:20-208:14.  These two employees worked during different time periods.  Tr. 209:16-210:4.  As set forth above, and at length in the margin Durrani's testimony about these employees was not credible.[6]

When Plaintiff started working for Defendants in 1989 he was paid $4.00 per hour with no overtime.  Tr. 140:13-14.  Sometime between 2002 and 2004, Plaintiff received a raise to $10.00 per hour, working the same schedule.  Tr. 142:5-22.  The weekly pay was $400.00 cash – there was no pay for hours worked above 40 per week. Tr. 145:20-146:5.  This continued until July 2014 when Plaintiff quit.  Tr. 143:11-21,

---

two reasons.  Initially, each of the Customer Witnesses was credible in his or her demeanor and recollection of events.  Moreover, none of them had any incentive to lie.  There was no discernable benefit to any of them for coming to court to testify.  Accordingly, the Court credits all of the testimony of the Customer Witnesses and rejects Defendants' dismissal of them as liars.

[6] The Court further notes that Defendants submitted testimony that Plaintiff had been out of the country, either in Canada or Pakistan for long periods some time prior to 2008, contrary to certain times when Awan claimed he was working for Defendants.  *See* Tr. 203:8-204:19 (stating that Plaintiff was in Canada for six or seven years and in Pakistan for a year).  This testimony was irrelevant as it all occurred outside the relevant statute of limitations period and the time for which Plaintiff seeks damages.  *See* Tr. 235:3-10 (parties agreeing that the relevant statute of limitations period is six years under New York Labor Law rendering pre-2008 conduct irrelevant).  Further, the Court would reject this testimony in any event, because, at set forth above, Mr. Durrani, who provided it, was not a credible witness.

144:6-146:12.  In total, Awan claims now that he worked 18 hours per day – 126 hours per week – and never received pay for more than 40 hours per week at his regular hourly rate of $10.00.  Tr. 150:24-151:11, 153:12-13, 166:12-20.[7]  The only exception was that when Mr. Durrani went to Pakistan for six weeks each year Plaintiff took an extra $500.00 per week for a total of $900.00 per week with Defendants' permission.  Tr. 170:4-170:19.

In contrast, Durrani testified that Plaintiff generally left the Smoke Shop from approximately 8:30 a.m. until 2:00 p.m. every day, and that he received a salary of $900 per week.  Tr. 52:1-19, 77:10-13, 205:23-206:3.  For the reasons set forth above and in the margin, the Court credits the testimony of Plaintiff and the Customer Witnesses over that of Durrani and finds that, at all relevant times, Plaintiff worked at the Smoke Shop seven days a week for eighteen hours per day, a total of 126 hours per week.  The Court further concludes that Plaintiff was paid $10 per hour, but only received $400 per week.

## III.  CONCLUSIONS OF LAW

It is well established that the plaintiff "bear[s] the burden of proof to establish all claims and damages by a preponderance of the evidence."  *Tapia v. Blch 3rd Ave. LLC*, No. 14 Civ. 8529, 2016 WL 4581341, at *4 (S.D.N.Y. Sept. 1, 2016).  To the extent that Defendants invoke an exemption as an affirmative defense, they bear the burden to establish that the affirmative defense applies.  *Kahn v. Superior Chicken*

---

[7] The Court notes that in the Complaint Plaintiff states that was paid $800 per week, and that at trial he stated that number in the Complaint was erroneous.  Tr. 168:14-168:23.  The Court credits his testimony and finds it credible.

*& Ribs, Inc.*, 331 F. Supp. 2d 115, 117 (E.D.N.Y. 2004).  For the reasons set forth herein, the Court concludes that Plaintiff has satisfied his burden in establishing that Defendants violated the overtime provisions of the FLSA and NYLL, and that he is entitled to recover $549,345.00 in damages.  Further, Defendants have failed to establish that Awan was covered by any exemption that would protect them from liability.

## A. <u>Liability for Violation of the FLSA and NYLL</u>

Plaintiff asserts that Defendants violated the FLSA and NYLL by failing "to pay [him] the overtime pay required by law."  *See* Pl.'s Supp. Br. ¶ 20; *see also* Compl. ¶¶ 30-49.  Plaintiff claims that he "worked seven (7) days per week and 18 hours per day for a total of 126 hours per week."  *See* Pl.'s Supp. Br. ¶ 42.  Awan further argues that "Defendants did not prove by a preponderance of the evidence that the overtime pay law does not apply because [he] is exempt from those requirements under the executive exemption."  *Id.* at ¶ 24.  Defendants counter that they "believe that Plaintiff . . . acted in an executive capacity in his employment" with the Smoke Shop, and that Plaintiff "hired, fired and supervised employees at the convenience store . . . ."  *See* Defs.' Supp. Br. ¶¶ 17, 18.

### 1. <u>Threshold Issues</u>

Before addressing the question of Defendants' liability and Plaintiff's damages, the Court notes that the threshold issues for bringing an action under the FLSA and NYLL have been satisfied.  As an initial matter, the Smoke Shop is subject to the FLSA's wage-and-hour provisions because it was "an enterprise engaged in

commerce" and, at all relevant times, its annual gross volume of sales and business exceeded $500,000. *See* 29 U.S.C. §§ 206(a), 207(a)(1); *see also* JPTO ¶ 5; Tr. 104:11-13. Therefore, the Court has: (i) subject matter jurisdiction over Plaintiff's claims arising under the FLSA pursuant to 28 U.S.C. §§ 1331 and 1337; and (ii) supplemental jurisdiction over Plaintiff's claims arising under the NYLL pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy. *See Tapia*, 2016 WL 4581341 at *4 (observing that the court had subject matter jurisdiction over the plaintiff's claims arising under the FLSA and NYLL). Moreover, venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because the Smoke Shop is a "domestic business corporation organized under the laws of New York, with a principal executive office and an address for service of process located at 57 Bay Shore Road, Bay Shore, New York 11706," within this judicial district. *See* JPTO ¶ 2; *see also* 28 U.S.C. § 1391; *Tapia*, 2016 WL 4581341, at *4.

### 2.  Whether Defendants are Liable under the FLSA and NYLL

Pursuant to both the FLSA and NYLL, "employees working more than forty hours per week [must] be compensated for overtime work at a rate of one-and-a-half times their standard rate." *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 289 (E.D.N.Y. 2010); *see* 29 U.S.C. § 207(a)(1) (setting forth this standard); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (adopting the FLSA's provisions and exemptions); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) ("The NYLL, like the FLSA, requires that employers pay one and one-half times an employee's regular rate of work performed in excess of

forty hours a week."); *Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("The New York Labor Law mirrors the FLSA in most aspects, including its wage and overtime compensation provisions."). However, employees employed in a "bona fide executive capacity" are exempt from the overtime provisions of both statutes. 29 U.S.C. § 213(a)(1); N.Y. Lab. Law § 651(5)(c); *see Callari v. Blackman Plumbing Supply Inc.*, 988 F. Supp. 2d 261, 275 (E.D.N.Y. 2013) (observing that the FLSA and NYLL overtime and minimum wage provisions do not apply to employees "who are employed in 'a bona fide executive . . . capacity'. . . .").

Although neither the FLSA nor the NYLL defines the term "executive" for purposes of the executive exemption, the United States Department of Labor ("DOL") has promulgated regulations to aid in the analysis of whether an employee is exempt from the FLSA's overtime and minimum wage provisions. *See* 29 C.F.R. §§ 541.0 *et seq.* (the "Regulations"); *see also* 29 U.S.C. § 213(a)(1) (directing the Secretary of Labor to define, among other terms, "executive" for purposes of the executive exemption); *Callari*, 988 F. Supp. 2d at 275-76 (observing that the "[R]egulations have the force of law, and are generally given controlling weight"). To that end, courts in the Second Circuit also look to the Regulations in determining whether an employee is exempt under the NYLL. *See* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (adopting the FLSA's provisions and exemptions); *see also Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 160 (S.D.N.Y. 2014) ("FLSA's exemptions are incorporated into the NYLL."); *Gardner v. W. Beef Props., Inc.*, No. 07-CV-2345, 2013 WL 1629299, at 3 n.2 (E.D.N.Y. Mar. 25, 2013) ("New York law follows the FLSA on the standards

that govern the executive exemption.") (Report and Recommendation), *adopted by* 2013 WL 1632657 (E.D.N.Y. Apr. 16, 2013); *Scott v. SSP Am., Inc.*, No. 09-CV-4399, 2011 WL 1204406, at *6 n.7 (E.D.N.Y. Mar. 29, 2011) (internal citations omitted) ("Because New York's overtime provisions mirror and/or expressly adopt federal wage law, federal courts evaluate New York's executive exemption by reference to the Fair Labor Standards act of 1938 and its attendant regulations, set forth in the Code of Federal Regulations.").  Relevant here, the Regulations provide that:

> The term "employee employed in a bona fide executive capacity" . . . shall mean any employee:
>
> (1) Compensated on a salary basis at a rate of not less than $455 per week . . ., exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  It is well-established that "[i]t is the employer's burden to demonstrate that it is entitled to a particular exemption." *Kahn*, 331 F. Supp. 2d at 117; *see also Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519-20 (S.D.N.Y. 2013) ("An employer seeking to rely upon an exemption as a defense to overtime bears the burden of proving that such exemption applies."); *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361, 2010 WL 2465488, at *2 (S.D.N.Y. June 16, 2010) ("[T]he employer bears the burden of proving that [an employee] has been properly classified as an exempt

employee"); *Clougher*, 696 F. Supp. 2d at 289 n.4 (observing that the "application of the 'executive exemption' is an affirmative defense, which any defendant employer bears the burden of proving by a preponderance of the evidence"). Moreover, "because the FLSA is a remedial act, its exemptions, such as the bona fide executive' exemption . . . are to be narrowly construed." *Martin v. Malcom Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991).

Here, Plaintiff has established by a preponderance of the evidence that Defendants violated the overtime provisions of the FLSA and NYLL. As an initial matter, the Court notes that Defendants do not dispute that Plaintiff did not receive overtime compensation despite the fact that he worked in excess of forty hours per week. *See* Defs.' Supp. Br. ¶¶ 24-27. Rather, they contend that Awan was exempt from the FLSA and NYLL's overtime provisions pursuant to the executive exemption. *Id.* at ¶ 17. To that end, in the Summary Judgment Opinion the Court held that "material issues of fact exist as to each of the [Regulations'] factors sufficient to warrant a trial as to whether the executive exemption applies." *Awan*, 2015 WL 4000139, at *13. The Court further concluded that "a trial is required on the issue of whether, and in what capacity, the Smoke Shop employed other individuals" and "the degree to which Awan supervised them." *Id.* at *12. However, in Defendants' Proposed Findings of Fact and Conclusions of Law, although Defendants claim that Plaintiff "hired, fired and supervised employees" at the Smoke Shop, they "concede that these employees were part-time employees that worked at the convenience store sporadically, and, as such, Plaintiff . . . did not customarily and regularly direct the

14

work of at least two or more other full-time employees or their equivalent."  Defs.'
Supp. Br. ¶ 18.  Accordingly, Defendants fail to satisfy their burden in demonstrating
that Awan was an exempt executive employee under the FLSA and NYLL.  *See* 29
C.F.R. § 541.104(a) ("To qualify as an exempt executive under § 541.100, the employee
must customarily and regularly direct the work of two or more other employees.");
N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (exempting from the New York State
overtime rate only those employees concurrently exempt under sections 7 and 13 of
29 U.S.C.A. 201 et seq., the FLSA, as amended).  Accordingly, the Court concludes
that Plaintiff has established by a preponderance of the evidence that Defendants
violated the overtime provisions of the FLSA and NYLL by failing to pay him at a
rate equal to one-and-one-half times his normal rate of pay for hours worked in excess
of forty in a given week.

### 3.  Whether Durrani is Individually Liable as Plaintiff's Employer

Next the Court addresses whether Defendant Hamid Durrani is individually
liable for the overtime compensation due to Plaintiff.  Pursuant to the FLSA, an
employer is "any person acting directly or indirectly in the interest of an employer in
relation to an employee."  29 U.S.C. § 203(d).  To that end, "[t]he statutory standard
for employer status under the NYLL is nearly identical to that of the FLSA."
*Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176, 2016 WL 3248493, at *22 (S.D.N.Y. June
9, 2016); *see also Switzoor v. SCI Engineering, P.C.*, No. 11 Civ. 9332, 2013 WL
4838826, at *6 (S.D.N.Y. Sept. 11, 2013) (noting that the courts of the Southern
District of New York have applied the same employer analysis to the FLSA and

NYLL).   Further, "an employer may include an individual owner who exercises a sufficient level of operational control in the company's employment of employees." *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F. Supp. 2d 187, 201 (E.D.N.Y. 2013) (citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-11 (2d Cir. 2013)); *accord Switzoor*, 2013 WL 4838826, at *6 (observing that "[a] person may not be held individually liable for a company's FLSA violations simply because he was an executive of that company").   In determining whether an individual is an employer, courts consider "whether the individual: '(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Gillian v. Starjam Rest. Corp.*, No. 10 Civ. 6056, 2011 WL 4639842, at *4 (S.D.N.Y. Oct. 4, 2011); *see Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672, 2009 WL 605790, at *9 (E.D.N.Y. Mar. 9, 2009) (quoting *Keun–Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (quoting *Donavan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983))) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liab[le] under the FLSA for unpaid wages.").

Here, the parties stipulated that Durrani "is an owner, officer, director and/or managing member" of the Smoke Shop, and that he "exercised control over the terms and conditions of Plaintiffs [*sic*] employment and those of similarly situated employees," and Durrani's trial testimony was consistent with this stipulation.  JPTO ¶ 4; *see* Tr. 34:22-24.   These facts are sufficient to establish that Durrani was

16

Plaintiff's employer pursuant to the FLSA and NYLL. *See Elerberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) (holding that an individual was an employer pursuant to the FLSA where he "exercised sufficient operational control over [the organization's] employees during [the plaintiff's] employment"); *Alladin v. Paramount Mgmt., LLC*, No. 12 Civ. 4309, 2013 WL 4526002, at *4 (S.D.N.Y. Aug. 27, 2013) (holding that a defendant who had supervisory authority over the plaintiff and established the terms of her employment was an employer under the FLSA). Accordingly, Durrani and the Smoke Shop are jointly and severally liable for Defendants' violations of the overtime provisions of the FLSA and NYLL. *See Gayle*, 2009 WL 605790, at *9.

### B. **Damages**

Having concluded that Plaintiff has established Defendants' liability for violation of the FLSA and NYLL, the Court considers whether Plaintiff has satisfied his burden of establishing the damages he claims. It is well-established that the party seeking damages "must prove the amount of damages by a preponderance of the evidence." *Solis*, 938 F. Supp. 2d at 392. Based on his assertion that he worked "18 hours per day for a total of 126 hours per week," Plaintiff claims that he is entitled to $1,229,430.00 in damages, including: (i) $201,240.00 in unpaid overtime under the FLSA for the applicable period of three years; (ii) $402,480.00 in unpaid overtime under the NYLL for the applicable period of six years; (iii) $201,240.00 in liquidated damages under the FLSA; (iv) $402,480.00 in liquidated damages under the NYLL; (v) $21,900.00 in unpaid meal period compensation under the NYLL; and (vi)

prejudgment interest.  *See* Pl.'s Supp. Br. ¶¶ 42-48; Compl.  Plaintiff also seeks leave to file an application for an award of attorneys' fees and costs.  *See* Pl.'s Supp. Br. ¶ 49.  In opposition, Defendants contend that, "Plaintiff's damages, if any, should be calculated on the fact that he worked 80.5 hours per week."  *See* Defs.' Supp. Br. ¶ 27.  For the reasons set forth below, the Court concludes that Plaintiff is entitled to recover $809,572.84 in compensatory and liquidated damages and prejudgment interest, as well as an additional amount for post-judgment interest.  The Court further grants Plaintiff leave to file an application for attorneys' fees and costs.

    1.  <u>Statute of Limitations</u>

A cause of action arising under the FLSA must "be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  *See* 29 U.S.C. § 255(a).  Accordingly, claims of willful violations of the FLSA are subject to a three-year statute of limitations.  *See Cohen v. Gerson Leman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) ("The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.").  A violation of the FLSA is considered willful "if the employer 'either knew or showed a reckless disregard for the matter or whether its conduct was prohibited by the [FLSA]."  *Quiroz v. Luigi's Doleria, Inc.*, No. 14-CV-871, 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)); *see* 5 C.F.R. §551.104 (defining "reckless disregard" as a "failure to make adequate inquiry into whether conduct is in compliance with the

[FLSA]").   It is well-established that "[t]he plaintiff bears the burden of proving willfulness, and '[a]ll that is required is that the employer knew or had reason to know that it was or might have been subject to the FLSA.'"  *Eschmann*, 2014 WL 1224247, at \*5 (quoting *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 870 (S.D.N.Y. 1984)).

The NYLL provides for a six-year statute of limitations.  *See* N.Y. Lab. Law § 198(3); *see also Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881, 2014 WL 1224247, at \*4 (E.D.N.Y. Mar. 24, 2014) ("A plaintiff seeking damages for an overtime violation under the NYLL has six years from the date of the alleged violation to assert his claim.").  Indeed, the parties have stipulated that "damages would be calculated from 2008 to 2014."[8]  *See* Pl.'s Supp. Br. ¶ 18; Defs.' Supp. Br. ¶ 15.

Here, Plaintiff has established by a preponderance of the evidence that Defendants willfully violated the FLSA.  According to Awan, he asked Durrani "every week" to receive overtime compensation, but Durrani never complied.  Tr. 144:23-145:24.  To that end, Durrani specifically testified that he knew that the overtime pay requirement is "time and a half," but that if an employee is "working [on a] salary basis all the time [it] doesn't matter."  Tr. 76:4-13.  Accordingly, Durrani did not pay Plaintiff overtime compensation at any time during the course of Plaintiff's employment at the Smoke Shop.  Tr. 145:20-24, 233:7-25.  Durrani further testified that he "never made any effort to maintain any payroll records for" Awan, and that he "never wrote down the hours that [Awan] worked."  Tr. 39:1-8.  Moreover, Durrani

---

[8] The parties do not differentiate between Plaintiff's claims arising under the FLSA and NYLL for purposes of the stipulated statute of limitations.  *See* Pl.'s Supp. Br. ¶ 18; Defs.' Supp. Br. ¶ 15.

admitted that he did not withhold employment taxes from Plaintiff's wages or inform his accountant that Plaintiff worked at the Smoke Shop and that he was paid in cash. Tr. 46:4-12. This was in stark contrast to Durrani's treatment of his wife. Though he listed her in his tax forms as his employee, covered her under his workers' compensation insurance policy, and disclosed her employment to his accountant, he appeared unable or willing to explain the rationale behind her level of compensation beyond the fact that she also was a "salaried" employee. Tr. 46:4-49:11, 58:15-60:25; *see* Tr. 110: 21-111:7 (Defendant's accountant: "I assume she did some paperwork and worked behind the counter. But I don't know off hand. I was never really told.").

These facts are sufficient to establish that Durrani "knew or had reason to know that [he] was or might have been subject to the FLSA." *Eschmann*, 2014 WL 1224247, at *5; *see also Reich v. Waldbaum, Inc.*, 52 F.3d 35, 41 (2d Cir. 1995) (holding that the defendant acted willfully where the defendant failed to pay the plaintiff overtime based on his belief that the plaintiff was exempt under the FLSA); *Mark v. Gawker Media LLC,* No. 13-CV-4347, 2016 WL 1271064, at *2 (S.D.N.Y. Mar. 29, 2016) (quoting *Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618, 627 (S.D.N.Y. 2014) (noting that "employers may be found to have acted recklessly pursuant to the FLSA if they made neither a diligent review nor consulted with counsel regarding their overtime practices and classifications of employees); *Moon*, 248 F. Supp. 2d at 231 (holding that the defendant's knowing violations of recordkeeping requirements was sufficient to establish willfulness under the FLSA); *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337-38 (S.D.N.Y. 2005) (holding that the defendant's knowing failure

to pay appropriate overtime established willfulness under the FLSA).  Accordingly, Plaintiff has satisfied his burden in establishing that Defendants willfully violated the FLSA.

As a result, Plaintiff's claims arising under:  (i) the FLSA are subject to a three-year statute of limitations, and his damages arising thereunder will be calculated from July 30, 2011 through July 1, 2014; and (ii) the NYLL are subject to a six-year statute of limitations, and his damages arising thereunder will be calculated from July 30, 2008 through July 1, 2011.[9]

### 2.  Unpaid Overtime Wages

Based on his contention that he worked "18 hours per day for a total of 126 hours per week," Plaintiff claims he is entitled to recover $603,720.00 in unpaid overtime wages under the FLSA and NYLL.  *See* Pl.'s Supp. Br. ¶¶ 43, 44.  Defendants counter that "Plaintiff never established that he worked 18 hours a day," but rather, "at most, Plaintiff's damages, if any, should be calculated on the fact that he worked 80.5 hours per week."  Defs.' Supp. Br. ¶¶ 25, 27.  Accordingly, the Court first considers the amount of time Plaintiff worked for which he is entitled to overtime compensation.

---

[9] Plaintiff calculates his unpaid overtime wages under the NYLL from July 1, 2008 through July 1, 2014.  *See* Pl.'s Supp. Br. ¶ 43.  However, a plaintiff may not recover compensatory damages under both the FLSA and NYLL for the same time period.  *See Jin M. Cao v. Wi Liang Lexington Rest., Inc.*, No. 08 Civ. 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) ("Although plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor Law, they may not recover twice."); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 n.15 (E.D.N.Y. 2015) ("Plaintiffs may not recover for unpaid wages under both statutes . . . .").  Because Awan seeks unpaid overtime wages under the FLSA from July 1, 2011 through July 1, 2014, he may not also recover unpaid overtime wages under the NYLL for that same period.

i. *Number of Hours Worked*

Both the FLSA and NYLL require that employers maintain accurate records of the hours and wages of their employees. *See* 29 U.S.C. § 211(c) (requiring that employers "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him"); N.Y. Lab. Law § 661 (requiring that employers establish and maintain payroll records "showing for each week worked the hours worked, the rate or rates of pay and basis thereof"). Where an employer fails to maintain accurate or adequate records, "an employee has carried out his burden if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 379 (E.D.N.Y. 2012) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187 (1946)); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997) (internal citations omitted) (holding that where a defendant fails to maintain required employment records, the employee may "submit sufficient evidence from which violations of [the FLSA] and the amount of an award may be reasonably inferred"). A "plaintiff can meet this burden 'by relying on recollection alone.'" *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)). Where a plaintiff satisfies his or her initial burden, "[t]he burden then shifts to the employer to show that the inference is not reasonable." *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 273 (E.D.N.Y 2008).

Here, Defendants failed to maintain adequate records reflecting the number of hours that Awan worked as well as his rate of pay.  In fact, Durrani conceded that he neither kept any form of payroll records reflecting Plaintiff's employment at the Smoke Shop, nor did he write down the number of hours that Plaintiff worked.  *See* Tr. 38:2–39:8.  Moreover, in their Proposed Findings of Fact and Conclusions of Law, Defendants admit that they "never maintained payroll records for Plaintiff . . . ." Defs.' Supp. Br. ¶ 20.  Similarly, in their Response to Plaintiff's First Request for the Production of Documents, Defendants wrote that they "are not in possession of any documents referring to, relating to, or reflecting": (i) the time and day of the week when Plaintiff's work week began; (ii) the hours worked each day by Plaintiff; (iii) the total hours worked each week by Plaintiff; (iv) the basis on which Plaintiff's wages were paid; or (v) Plaintiff's regular hourly rate of pay.  *See* Trial Exhibit 6.  Because Defendants concede that they failed to maintain accurate records regarding Plaintiff's employment at the Smoke Shop, the Court may, and does, rely on Plaintiff's recollection in determining the amount of unpaid overtime wages.  *Rana v. Islam*, --- F. Supp. 3d ---, 2016 WL 5390941, at *2 (S.D.N.Y. Sept. 26, 2016) (quoting *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 331 (S.D.N.Y. 2009)) ("Where, as here, an employer has failed to maintain adequate records of an employee's time worked as required under the FLSA, 'a plaintiff employee must produce only sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'").

Applying these standards, the evidence is sufficient to support the conclusion that Plaintiff worked at the Smoke Shop every day from approximately 5:00 a.m. until 11:00 p.m.  Although Plaintiff testified that he stayed at the Smoke Shop from 5:00 a.m. until approximately 11:00 p.m. every day, Durrani testified that Plaintiff generally left the store from approximately 8:30 a.m. until 2:00 p.m. each day.  *See* Tr. 50:21-25, 51:8-16, 142:9-143:21, 150:20-25.  However, for the reasons set forth above, the Court rejects Durrani's testimony.  In contrast, and as set forth above, in addition to Plaintiff's testimony, the Customer Witnesses testified credibly that they regularly saw Plaintiff working at the Smoke Shop between the hours of 8:30 a.m. and 2:00 p.m.  By way of example, Jiminez testified that she went to the Smoke Shop at approximately 1:00 p.m. several times per week, and that Awan "was always there."  Tr. 12:1-3, 13:5-16.  Reidel testified that he went to the Smoke Shop approximately three times a day from 2004 until 2012, and that Plaintiff "was there from the morning until the evening."  Tr. 21:3-9, 23:11-18, 28:5-24.  Cuffie testified that he went to the Smoke Shop between 10:00 a.m. and 2:00 p.m. "probably two to three times a week" since approximately 2005, and that Plaintiff was always there.  Tr. 126:10-18, 128:6-16, 129:6-11, 130:23-131:3.  Accordingly, the Court credits Plaintiff's testimony and concludes that, from July 1, 2008 until July 1, 2014, Plaintiff worked at the Smoke Shop seven days a week from 5:00 a.m. until 11:00 p.m., for a total of 126 hours per week.

ii.    *Regular and Overtime Rates of Pay*

Pursuant to both the FLSA and NYLL, an employee's overtime rate of pay depends on the employee's "regular rate." *See* 29 U.S.C. § 207(a)(1) (requiring that employers pay covered employees "at a rate not less than one and one-half times the regular rate" for hours in excess of forty); N.Y. Comp. Codes R. & Regs. tit. 12, § 138-2.2 (requiring that employers pay employees "at a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of" 40).  An employee's "regular rate is 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Doo Nam Yang*, 427 F. Supp. 2d at 338 (S.D.N.Y. 2005) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S. Ct. 1242 (1945)).  To that end, the "regular rate" is calculated by "dividing the employee's weekly compensation by the number of hours for which that compensation is intended." *Moon*, 248 F. Supp. 2d at 230.

Plaintiff testified that he was an hourly employee and that his regular rate of pay was $10 per hour at all relevant times.  *See* Tr. 145:20-24; Pl.'s Supp. Br. ¶ 11. More specifically, Plaintiff stated that he received $400 per week, and that he did not receive any payment for hours that he worked in excess of forty.  *See* Tr. 153:12-13. In contrast, Durrani testified that Plaintiff was a salaried employee, and that he actually received $900 per week.  Tr. 77:10-14.  However, as discussed above, the Court rejects Durrani's testimony, and it credits Plaintiff's testimony and recollection.  *See Santillan*, 822 F. Supp. 2d at 294.  In any event, Plaintiff offered a plausible reconciliation for Durrani's testimony that Plaintiff received $900 per week.

According to Plaintiff, when Durrani went to Pakistan for six weeks every year, Plaintiff took an additional $500 per week, bringing his weekly salary during those time periods to $900.  Tr. 169:19-170:18, 172:16-23.  Plaintiff further testified that Durrani was aware that Plaintiff was taking the additional $500 during these times.  Tr. 170:24-171:1.  Accordingly, the Court concludes that Plaintiff's regular rate of pay at all relevant times was $10 per hour and his overtime rate of pay is $15 per hour.

### iii.   Calculation of Unpaid Overtime

Pursuant to the FLSA, employers are required to "pay their employees the statutory minimum wage as well as a premium (150 percent of the legally mandated minimum regular wage) for hours worked above 40 hours per week."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012) (citing 29 U.S.C. §§ 206(a), 207(a)(1)).  Having determined that Plaintiff worked 126 hours per week at a regular rate of employment of $10 per hour, Plaintiff is entitled to recover minimum and overtime wages for:  (i) 86 hours of overtime per week at a rate of $15 per hour for the 46 weeks a year that he received $400 per week, and (ii) 52 ⅔ hours of overtime per week at a rate of $15 per hour for the six weeks a year that he received $900 per week.[10]  Accordingly, Plaintiff is entitled to recover $64,080.00 in unpaid wages per year under the FLSA.  Therefore, for the three-year statutory period of July 30, 2011 until July 1, 2014, Plaintiff is entitled to recover $187,080.00 in unpaid wages under that statute.[11]

---

[10] The additional $500 Plaintiff received reflects payment for thirty-three and one-third hours of work at his overtime rate of $15 per hour.

[11] Assuming 52 weeks in a year, the Court calculated the total compensatory damages under the FLSA by taking two full years of unpaid overtime, $128,160.00, and adding to it eleven additional

Similarly, pursuant to the NYLL, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of [the FLSA]."  12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142.22; *see also Yuquilema v. Manhattan's Hero Corp.*, No. 13 Civ. 461, 2014 WL 4207106, at *3 (S.D.N.Y. Aug. 26, 2014) ("Both federal and state law also mandate that an employee be paid at a rate not less than one-and-a-half times the regular rate for any time worked beyond the first 40 hours per week.") (Report and Recommendation), *adopted by* 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014).  Because the NYLL calculates unpaid wages in the same manner as the FLSA, Plaintiff is also entitled to recover $192,240.00 in unpaid wages under the NYLL for the period of July 30, 2008 until July 30, 2011.[12]

Based on the foregoing, Plaintiff is entitled to recover $379,320.00 in unpaid overtime compensation under the FLSA and NYLL.

3. Liquidated Damages

Plaintiff also seeks a total of $603,720.00 in liquidated damages, including:  (i) $201,240.00 in liquidated damages under the FLSA and (ii) $402,480.00 in liquidated damages under the NYLL.  *See* Pl.'s Supp. Br. ¶¶ 45, 46.  For the reasons set forth herein, Plaintiff is entitled to a total of $234,405.00 in liquidated damages under the FLSA and NYLL.

---

months of unpaid overtime (42 weeks at the 86-hours-per-week rate plus six weeks at the 52-⅔-hours-per-week rate), $58,920.00, subtracting four weeks from the total due to the four-week gap between the end of the Defendant's employment and the filing of the present suit.

[12] As explained above, Plaintiff cannot recoup compensatory damages twice, under both the FLSA and NYLL, for the same time period.  *See supra* at 21 n. 9.  Accordingly, as Plaintiff did not recover under the FLSA for unpaid overtime from July 1, 2011 through July 30, 2011, the Court awards Awan this additional period of unpaid overtime under the NYLL.

       *i.*     *FLSA Liquidated Damages*

Under the FLSA, a plaintiff may recover "in the amount of their unpaid . . . wages . . . and in an additional equal amount as liquidated damages" absent a showing that the employer acted in good faith.  29 U.S.C. §§ 216(b), 260; *see also Reiseck Universal Commc'ns of Miami, Inc.*, No. 06 Civ. 777, 2014 WL 5374684, at *3 (S.D.N.Y. Sept. 5, 2014) (internal quotation marks and citation omitted) ("For FLSA claims, liquidated damages may be awarded in an additional amount equal to the unpaid overtime wages, essentially doubling a plaintiff's recovery."); *Angamarca v. Pita Grill 7 Inc.*, No. 11 CIV. 7777, 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012) ("Liquidated damages under the FLSA are equal to the amount owed in federal unpaid and overtime wages."); *Jiao v. Shi Ya Chen*, No. 03 Civ. 165, 2007 WL 4944767, at *16 (S.D.N.Y. Mar. 30, 2007) ("The [FLSA] provides for liquidated damages in order to compensate employees for the often obscure and hard-to-prove consequences of having been wrongfully denied pay, rather than to punish employers.").  Having concluded that Plaintiff is entitled to recover $187,080.00 in unpaid overtime compensation under the FLSA and that there is no evidence of Defendant's good faith, Awan is also entitled to recover $187,080.00 in liquidated damages under that statute.

       *ii.*    *NYLL Liquidated Damages*

The NYLL liquidated damages analysis is slightly different.  Although the NYLL also provides for liquidated damages, "for violations that occurred prior to November 24, 2009, an employee must establish 'that the employer's violation was

willful.'" *Hengjin Sun v. Cina 1221, Inc.*, No. 12 Civ. 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting *Galeana v. Lemongrass on Broadway Corp.,* 120 F. Supp. 3d 306, 317-318 (S.D.N.Y. 2014)); *see also McLean v. Garage Mgmt. Corp.*, No. 10 Civ. 3950, 2012 WL 1358739, at *8 (S.D.N.Y. Apr. 19, 2012) (observing that prior to November 24, 2009, a plaintiff was only entitled to recover liquidated damages under the NYLL "if plaintiffs could prove that employers' NYLL violations were willful"); N.Y. Lab. Law § 198(1-a) (permitting liquidated damages after November 24, 2009 unless "the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law"). However, "the NYLL 'willfulness' standard under the pre-amendment provision 'does not appreciably differ from the FLSA's willfulness standard.'" *McLean*, 2012 WL 1358739, at *8 (quoting *Kuebel v. Black and Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)); *see Castellanos v. Mid Bronx Community Housing Mgmt. Corp.*, No. 13 Civ. 3061, 2014 WL 2624759, at *3 (S.D.N.Y. June 10, 2014) (internal quotation marks omitted) ("The standard for willfulness under NYLL does not appreciably differ from that of the FLSA."). Having determined that Defendants willfully violated the FLSA, Plaintiff is also entitled to recover liquidated damages under the NYLL.

However, whereas the current version of the NYLL permits recovery of liquidated damages amounting to 100% of the total unpaid wages, prior to the effective date of the amendment of the liquidated damages provision, April 9, 2011, employees were only able to "recover liquidated damages in the amount of 25% of the total unpaid wages." *Hengjin Sun*, 2016 WL 1587242, at *3 (citing N.Y. Lab. Law §

663(1)); *see also Rana*, 2016 WL 5390941, at *3 (awarding NYLL liquidated damages at a rate of 100% for overtime, minimum wage, and spread of hours violations occurring from 2012 through 2014). Further, courts in the Second Circuit have observed that "[t]here is no statutory language suggesting a legislative intent to apply the statute retroactively." *McLean*, 2012 WL 1358739, at *9; *see Eschmann*, 2014 WL 1224247, at *13 ("[T]he statutory text, legislative history, and weight of authority support the conclusion that the [amendment] does not apply retroactively . . . ."); *Chenensky v. N.Y. Life Ins. Co.*, No. 07 Civ. 11504, 2012 WL 234374, at *3 (S.D.N.Y. Jan. 10, 2012) ("As plaintiffs concede, there is no legislative history evincing an intent to apply the 2011 Amendment retroactively."). Therefore, Plaintiff is entitled to recover liquidated damages under the NYLL in the amount of: (i) 25% of total unpaid wages from July 30, 2008 until April 8, 2011, and (ii) 100% of total unpaid wages from April 9, 2011 until July 30, 2011, for a total of $62,847.69 in liquidated damages under the NYLL.[13]

Finally, Plaintiff seeks to recover liquidated damages under the NYLL for the period of July 1, 2011 until July 1, 2014, a period of time that is also covered by his FLSA claim. *See* Pl.'s Supp. Br. ¶ 46. Prior to the 2011 Amendment to the NYLL increasing liquidated damages from 25% to 100% of total unpaid wages, some courts "awarded cumulative liquidated damages under both the FLSA and NYLL because

---

[13] The Court determined that Plaintiff's unpaid wages under the NYLL from July 30, 2008 until April 8, 2011 (two years and 36 weeks) were $172,523.08. The remaining recovery period from April 9, 2011 until July 30, 2011 (sixteen weeks) covered an amount of unpaid overtime wages totaling $19,716.92. Applying the NYLL mandated twenty-five-percent recovery rate to the $172,523.08 results in a calculation of $43,130.77, which, when added to the $19,716.92 awarded at the 100% rate, totals $62,847.69 in NYLL liquidated damages.

the statutes' liquidated damages provisions serve[d] different purposes." *Hengjin Sun*, 2016 WL 1587242, at *3; *see also Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011) (Report and Recommendation), *adopted by* 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (observing that "[a]uthority is mixed regarding whether a plaintiff may recover liquidated damages under both federal and state law"). However, "the New York Legislature's 2009 and 2011 reforms have spawned 'an emerging trend towards denying a cumulative recovery of damages' under the FLSA and NYLL." *Hengjin Sun*, 2016 WL 1587242, at *4 (quoting *Santana v. Brown*, No. 14 Civ. 4279, 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015)). Accordingly, courts have more recently observed that "'[b]ecause both forms of liquidated damages serve the same purpose and have the same practical effect of deterring wage violations and compensating underpaid workers,' NYLL's recent amendments 'have undermined the basis,' such as it was, for distinguishing between FLSA's and NYLL's liquidated damages provisions." *Hengjin Sun*, 2016 WL 1587242, at *4 (quoting *Chen v. New Fresco Tortillas Taco LLC*, No. 15 Civ. 2158, 2015 WL 5710320, at *7 (S.D.N.Y. Sept. 25, 2015)). Accordingly, because Plaintiff is entitled to liquidated damages under the FLSA, the Court declines to award duplicative liquidated damages under the NYLL.[14]

---

[14] The Court recognizes that this conclusion is contrary to its Reports and Recommendations in *Escobar v. Del Monaco Bros. Indus. Inc.*, 14-CV-3091 at 26-27 (E.D.N.Y. Jul. 27, 2016) (Report & Recommendation), adopted by, 2016 WL 4275705 (E.D.N.Y. Aug. 13, 2016) and *Euceda v. Preesha Operating Corp.*, 14-CV-3143 at 18-20 (E.D.N.Y. July 13, 2016) (Report & Recommendation), adopted by 14-CV-3143 (E.D.N.Y. Sept 30, 2016). Upon consideration of the arguments made in this case, and reconsideration of Court's earlier orders, the Court concludes that separate awards of liquidated damages under each statute for the same compensatory damages are inappropriate.

Based on the foregoing, Plaintiff is entitled to $249,927.69 in liquidated damages, including: (i) $187,080.00 in liquidated damages under the FLSA, and (ii) $62,847.69 in liquidated damages under the NYLL.

4. <u>Prejudgment Interest</u>

Plaintiff also seeks prejudgment interest under the NYLL. *See* Compl. Prayer for Relief ¶ g. Although it is "well settled" that prejudgment interest is not awardable under the FLSA, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015). Under the New York Civil Practice Law and Rules ("CPLR"), "[i]nterest shall be at the rate of nine per centum per annum." N.Y. C.P.L.R. § 5004. Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." N.Y.C.P.L.R. § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-04760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013). Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest. *See Fermin*, 93 F. Supp.3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest . . . .") (quotation omitted). A common date is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ." *Gunawan*, 897 F. Supp. 2d at 93.

Here, the relevant period of employment for Plaintiff's overtime claims under the NYLL is July 30, 2008 through July 1, 2014. This action was filed July 30, 2014. The mid-point between July 30, 2008 and July 30, 2014 is approximately July 30, 2011. The compensatory damages for unpaid overtime wages due under the NYLL for that time period is $379,320.00.[15] The Court calculates pre-judgment interest on this amount at a rate of 9% per year to be $180,512.90.[16] As the unpaid overtime wages remain outstanding, daily interest shall continue to accrue at the rate of $93.53 per day for each day until judgment is entered.

Accordingly, the Court recommends that pre-judgment interest amounting to $180,512.90 be awarded to Plaintiff, with interest accruing at a daily rate of $93.53 until judgment is entered.

### 5. Meal Period Compensation

Next, Plaintiff seeks to recover $21,900.00 for "unpaid meal period compensation" under the NYLL. *See* Pl.'s Supp. Br. ¶ 47; *see also* N.Y. Labor Law § 162(2) ("An employee who works a shift of more than six hours which extends over the noon day meal period is entitled to at least thirty minutes off within that period for the meal period."). However, in the Summary Judgment Opinion, the Court held

---

[15] This total includes the amount that the Court awarded under the FLSA because the equivalent compensatory award is available under the NYLL for the same time period. *See Santillan*, 822 F. Supp. 2d at 298 (holding that prejudgment interest and liquidated damages under NYLL may be awarded in a matter also substantiating violations of the FLSA for an overlapping time period).

[16] This figure was reached by taking the number of days between the mid-point selected, July 30, 2011, and the date of this Order, November 10, 2016 (1,930 days) and multiplying it by the daily interest rate of $93.53 ($379,320.00 [principal loan amount] x 0.09 [yearly interest] = $34,138.80 (yearly interest) / 365 days = $93.53 per day interest).

that, "to the degree Awan seeks compensation for allegedly having been denied meal periods during his employment, no cause of action for such relief exists . . . ." *Awan*, 2015 WL 4000139, at \*9 n.12; *see Hill v. City of New York*, 136 F. Supp. 3d 304, 351 (E.D.N.Y. 2015) ("[T]here is no private right of action to enforce [N.Y. Lab. Law] § 162."). The Court further observed that, "to the extent that Awan is alleging that he worked through his statutory lunch breaks without pay, his claims may be cognizable under the overtime and minimum wage provisions of the NYLL discussed above." *Id.* In fact, when calculating the unpaid wages to which Plaintiff is entitled, the Court accounted for all hours that Awan worked in a given day. Accordingly, Awan is not entitled to recover additional amounts for unpaid meal times under the NYLL.

6. Attorneys' Fees and Costs

Finally, Plaintiff argues that he "is entitled to a statutory award of counsel fees to be determined at a hearing to be held on a [date] determined by this Court." Pl.'s Supp. Br. ¶ 49. Both the FLSA and NYLL allow for an award of "reasonable" attorney's fees to a prevailing party. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *see also Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, No. 15 Civ. 2158, 2015 WL 5710320, at \*10 (S.D.N.Y. Sept. 25, 2015) ("Under the FLSA and NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs."). Having determined that Plaintiff established Defendants' liability for violations of the FLSA and NYLL by a preponderance of the evidence, the Court concludes that Plaintiff is entitled to a reasonable award of attorneys' fees and costs. However, because Plaintiff

has not submitted documentation or other substantiation to support his request, he is granted leave to submit an application for such fees and costs.

## IV.   CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, the Court concludes that Plaintiff has proven his claims by a preponderance of the evidence and that he is entitled to recover $809,760.59 in damages.  On or before December 10, 2016, Plaintiff may submit an application for attorneys' fees and costs.

Dated:  Central Islip, New York
        November 10, 2016

**SO ORDERED**

/s Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge